**TEMPCO ELECTRIC HEATER CORPO-
RATION, Plaintiff-Appellant,**

v.

**OMEGA ENGINEERING, INC.,
Defendant-Appellee.**

No. 85–3068.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 1986.

Decided May 14, 1987.

Edward D. Gilhooly, Pigott, Gerstman & Gilhooly, Ltd., Chicago, Ill., for plaintiff-appellant.

W. James Cousins, Cousins & Sweigart, P.C., Stamford, Conn., for defendant-appellee.

Before CUMMINGS and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

This case requires us to determine whether the district court erred in dismissing a declaratory judgment action brought under 28 U.S.C. § 2201 (1982)[1] on discretionary grounds, because a trademark infringement action involving the same parties and issues was filed shortly after this action. We conclude he did not, and affirm.

I

Plaintiff, Tempco Electric Heater Corporation ("Tempco") is an Illinois corporation which manufactures electric heaters and accessories for them, including temperature control and measurement devices. It owns a federally registered trademark for its heaters, entitled "TEMPCO PLUS DESIGN," which includes the word "Tempco" and the greek letter omega " Ω ". It has also used this mark, although without federal registration, for its temperature measurement and control devices, since the 1970's. Defendant, Omega Engineering, Inc. ("Omega"), a Delaware corporation with its principal place of business in Connecticut, manufactures temperature measurement and control devices and likewise has a federally registered trademark which uses the greek letter omega.

Believing Tempco's use of the omega symbol on temperature measurement and

---

1. 28 U.S.C. § 2201 (1982) provides:
   In a case of actual controversy within its jurisdiction, [with certain exceptions], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration. . . .

control devices to be an infringement of Omega's trademark, Omega's counsel, W. James Cousins, sent a letter to Tempco on April 8, 1985, demanding that Tempco cease the allegedly infringing use. In the letter, Cousins demanded a response within 10 days and threatened litigation if Tempco did not so respond. Eight days later, having received no response, Cousins sent another letter reiterating the demand, with the deadline appropriately shortened to 48 hours. The following day, Tempco's president, Fermin Adames, telephoned Cousins and told him of Tempco's longstanding use of the mark (Cousins' letter had implied that Tempco had recently begun using the mark on products that competed with Omega's). On the same day, Tempco's counsel, John Brezina, communicated Tempco's disinclination to comply with the demand to Cousins. That position was reiterated to Omega on April 22, 1985. On that same day, Cousins sent another letter to Tempco, stating that Tempco's position left Omega no alternative but to file an action to protect its interests. Tempco received the letter on May 2, 1985. That same day, it filed this declaratory judgment action. On May 6, 1985, Omega filed its infringement action in the District of Connecticut.

Omega moved to dismiss Tempco's action on the ground that the infringement action involved the same facts, parties and issues. The district court granted the motion. Tempco appeals.

## II

■ It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction. *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 162 (1942); *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1217 (7th Cir. 1980); *Tamari v. Bache & Co.*, 565 F.2d 1194, 1199 (7th Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978); *Sears, Roebuck & Co. v. American Mutual Liability Insurance Co.*, 372 F.2d 435, 438 (7th Cir.1967); *American Automobile Insurance Co. v. Freundt*, 103 F.2d 613, 619 (7th Cir.1939). Thus, Tempco's assertions that "an actual controversy existed" at the time the demand by Omega was made and refused are largely beside the point. All that means is that the district court had the *power* to hear the suit, under the declaratory judgment statute and Article III. The issue we must determine is whether that discretion which the district court retained to decline to hear Tempco's declaratory judgment suit was properly exercised in this case.

### A

■ However, before we address the primary issue—whether the district court erred in dismissing the action on discretionary grounds—we must consider the subsidiary issue of the proper standard by which we review that decision. The parties are in sharp disagreement over that standard. Tempco insists that our determination is *de novo* and that we may substitute our own discretion for that of the district court; Omega, on the other hand, contends that we may only reverse the district court for abuse of discretion.

Both parties cite cases of this circuit as authority for their positions. However, we conclude that the weight of authority in this circuit supports the position that we should exercise our own discretion in reviewing the district court's decision. Additionally, we conclude that this is the better reasoned approach.

Unfortunately, this circuit and, indeed, the Courts of Appeal in general have failed to adopt a consistent approach to review district court decisions declining, on discretionary grounds, to entertain suits seeking declaratory judgments. For example, in *Tamari*, we initially noted that "[t]he appellate court may substitute its own judgment for that of the trial court if the trial court's exercise of that discretion is considered erroneous." 565 F.2d at 1199 (citations omitted). However, when we actually reviewed the exercise of discretion, we stated and applied a different standard:

'Generally, an appellate court may set aside a trial court's exercise of discretion only if the exercise of such discretion could be said to be arbitrary ... [D]iscretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could dif-

fer as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' (citations omitted)

565 F.2d at 1203 (quoting *Beshear v. Weinszapfel,* 474 F.2d 127, 134 (7th Cir.1973) (alterations in original).

In *International Harvester,* however, we returned to the more exacting standard of review, expressly noting that "[a] court of appeals, in deciding whether discretion should be exercised to decline or accept jurisdiction in a particular case, does not defer to the judgment of the district court; the court of appeals must exercise its own sound discretion as to the propriety of the grant or denial of a declaratory judgment." 623 F.2d at 1217 (citations omitted). Cases prior to *Tamari* had likewise applied this standard. *See National Health Federation v. Weinberger,* 518 F.2d 711, 712 (7th Cir.1975); *Cunningham Brothers v. Bail,* 407 F.2d 1165, 1169 n. 9 (7th Cir.), *cert. denied,* 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969); *Sears, Roebuck and Co.,* 372 F.2d at 438. The other circuits are, to put it mildly, divided over the issue. *Compare Broadview Chemical Corp. v. Loctite Corp.,* 417 F.2d 998, 1000 n. 3 (2d Cir.1969) (appellate court may substitute its judgment), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970) *with Mission Insurance Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 601 n. 2 (5th Cir.1983) (suggesting that abuse of discretion standard is more consistent with institutional role of appellate courts and declining to follow *International Harvester* ). Some courts have adopted an intermediate standard. *See Exxon Corp. v. FTC,* 588 F.2d 895, 900 (3d Cir.1978) (in reviewing discretionary denial of declaratory relief, the court would "not reverse merely because we would decide differently," but would give the decision "closer scrutiny than normally given on an 'abuse of discretion' re-

view"). Some draw a dichotomy between the *grant* of specific declaratory relief and the denial of any relief.[2] *See Interdynamics, Inc. v. Firma Wolf,* 698 F.2d 157, 167 & nn. 9–10 (3d Cir.1982); *Penthouse International Limited v. Barnes,* 792 F.2d 943 (9th Cir.1986). The commentators uniformly endorse a *de novo* standard. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2759 (2d ed. 1983 & Supp.1986); 6A J. Moore, *Moore's Federal Practice* ¶ 57.08[2] (2d ed. 1982); H. Friendly, *Indiscretion about Discretion,* 31 Emory L. J. 734, 778–79 (1982).

Despite the wealth of discussion of the issue, we find that few of the above authorities advance any *reasons* for choosing one standard over the other.[3] Moore comes closest to giving a reason for adoption of a *de novo* standard, noting that "This view of the appellate court's power ... permits greater uniformity than would otherwise be possible. Thus Professor Borchard is able to say that this is 'discretion hardened by experience into rule.' " Moore, ¶ 57.-08[2] at 57–36 to 57–37 (quoting Borchard, *Declaratory Judgments* 293 (2d ed. 1941)). We find in this observation the kernel of an additional reason, apart from the preponderance of our own prior case law, for adoption of a *de novo* standard to our review of the district court's decision whether to proceed *vel non* with a declaratory judgment action.

Litigation of this type is extremely time-consuming and wasteful. There is no outstanding factor in this case which points to trial of this action in either Illinois or Connecticut. Such will inevitably be the case in actions such as this where the owner of a trademark is in one location, and an alleged infringer is at some distance. Because the two actions are both in federal district courts, there are no concerns of comity or federalism which might enter the picture where a declaratory judgment ac-

---

**2.** We, of course, need not decide in this case what standard to apply to the grant of specific relief.

**3.** Judge Friendly, for example, after giving an illuminating discussion of the choice to be made, i.e., whether the discretion is "normative" or "allocative," baldly asserts that the abuse of discretion standard "is not the law, and it surely

should not be." Friendly, *Indiscretion About Discretion,* 31 Emory L.J. 747, 779 (1982). Wright, Miller, and Kane base their endorsement of broad appellate review on "the reasons developed" by Judge Friendly. C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2760 n. 22 (Supp.1986).

tion is pursued in federal court and a coercive remedy is pursued in state court. *Cf. Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1175 ("Interference with the orderly and comprehensive disposition of a state court litigation should be avoided."). While we do not mean to fault the parties for their attempts to protect themselves, from society's point of view it is essentially irrelevant which one of them bears the expense and inconvenience of litigating in a distant forum—someone must. To that cost must be added, however, the cost of decision.

In such circumstances, the value of a rule is plain. The decision of who must litigate in a distant forum should not have to be made from scratch each time. Standards are required. However, a district court exercising its discretion in each individual case cannot, by definition, formulate those standards; that is the work of an appellate court. Thus we agree that the decision whether to allow a declaratory judgment action to proceed is one which calls for "discretion hardened by experience into rule." In order to achieve this, appellate courts must be able to review decisions of the district courts *de novo.* [4]

### B

■ Even applying the more exacting standard of review, we find no error in the district court's decision. Where, as here, the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later.

The purposes of declaratory judgments are to "clarify[ ] and settl[e] the legal relations at issue" and to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Borchard, *Declaratory Judgments* 299 (2d ed. 1941). A declaratory judgment is available where a party desires a declaration of the legal effect of a proposed or past course of action. Essentially, two related but distinct fact situations are contemplated: (1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision.[5]

This suit is of the first type (or, more accurately, was until Omega filed suit). Tempco has already engaged in the allegedly infringing conduct, and continues to do so. Omega's right to a coercive remedy, if any, has accrued. In such circumstances, a federal court may grant a declaratory judgment to prevent one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit. However, Omega has not engaged in such conduct. It promptly field suit to enforce its claim that Tempco had infringed its trademark. Thus, a declaratory judgment would serve no useful purpose and was properly denied. *International Harvester*, 623 F.2d at 1218; *Cunningham Brothers*, 407 F.2d at 1169.

Tempco asserts that the district court deprived it of its "right" to bring a declaratory judgment action in the forum of its choosing. However, the mere fact that Tempco filed its declaratory judgment action first does not give it a "right" to

---

4. We are not unmindful of the cost of having two tribunals, rather than one, make the determination. However we believe this cost—which, in any event is not significantly lessened by a narrower standard of review unless that standard makes the lower tribunal's decision effectively unreviewable—is not as great as the cost which is engendered when the discretionary decision must be made afresh each time. Hopefully, as an appellate court we will be able to speak with sufficient clarity that we can speak less frequently. In the end, a clear rule should decrease litigation of this type at both the trial and appellate levels.

5. A classic example of this type of case is the oft cited *Willing v. Chicago Auditorium Association*, 277 U.S. 274, 48 S.Ct. 507, 72 L.Ed. 880 (1928), in which, prior to passage of the Declaratory Judgment Act, the Supreme Court held that a lessee could not obtain, in a suit to "remove a cloud" from the title of the leased premises, a declaration that tearing down an auditorium to allow construction of an office would not violate the lease (the lessors contended such action would entitle them to cancel the lease).

choose a forum.[6] This circuit has never adhered to a rigid "first to file" rule. *See Tamari*, 565 F.2d at 1203; *Chicago Furniture Forwarding Co. v. Bowles*, 161 F.2d 411, 412 (7th Cir.1947). We decline Tempco's invitation, based on *Crosley Corp. v. Westinghouse Electric & Manufacturing Co.*, 130 F.2d 474 (3d Cir.), *cert. denied*, 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546 (1942), to adopt such a rule here. As we have noted before, "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." *American Automobile Insurance*, 103 F.2d at 617. "'[T]he federal declaratory judgment is not a prize to the winner of the race to the courthouse.'" *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978) (quoting *Perez v. Ledesma*, 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 694, 27 L.Ed.2d 701 (1971) (Brennan, J., dissenting)), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

Our approach is consistent with that followed in similar cases elsewhere. *See American Griener Electronic, Inc. v. Establishments Henry-Le Paute, S.A.*, 174 F.Supp. 918 (D.D.C.1959) (declaratory judgment action brought a few days prior to patent infringement action dismissed); *Technical Tape Corp. v. Minnesota Mining & Mfg. Co.*, 135 F.Supp. 505 (S.D.N.Y. 1955) (declaratory judgment action against licensee seeking declaration that patent was invalid dismissed, where patentee had filed an infringement action against declaratory judgment plaintiff in another district fifteen days later). *Technical Tape* also involved the failure to join the patentee, an indispensable party, but we could not agree more with the court's observation that "the court is not called upon merely to say which side won the hundred yard dash to some courtroom." 135 F.Supp. at 509.

Although a "first to file" rule would have the virtue of certainty and ease of application, thus eliminating some of the waste referred to *supra* section A, the

cost—a rule which will encourage an unseemly race to the courthouse and, quite likely, numerous unnecessary suits—is simply too high.

## III

For the reasons stated above, the judgment of the district court is

AFFIRMED.

---

**6.** We note that some of Tempco's arguments are in the nature of venue objections, e.g., its contention that the claim arose in Illinois rather than Connecticut. Such contentions should have been, and apparently were, addressed to the Connecticut district court. We are not at liberty to review the correctness of that court's resolution of those issues.