NATURAL GAS PIPELINE COMPANY
OF AMERICA and NGPL–Trailblazer,
Inc., Plaintiffs,

v.

UNION PACIFIC RESOURCES
COMPANY, Defendant.

No. 90 C 2814.

United States District Court,
N.D. Illinois, E.D.

Aug. 16, 1990.

---

Theodore A. Livingston, Jonathan C. Medow, Kenneth E. Wile, Mayer, Brown & Platt, Michael M. Conway, Paul K. Vickrey, Christopher W. Zibart, Hopkins & Sutter, Chicago, Paul E. Goldstein, Paul Korman, Peter Connor, Natural Gas Pipeline Co. of America, Lombard, for plaintiffs.

Theodore R. Tetzlaff, Richard J. Gray, Bradford P. Lyerla, Jenner & Block, Chicago, Robert J. Brookhiser, Sheila R. Schreiber, Gregg A. Hand, Howrey & Simon, Washington, D.C. (Bill J. Zimmerman, Kerry R. Brittain, Union Pacific Resources Co., Fort Worth, Tex., on brief), for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Natural Gas Pipeline Company ("Natural") brought a four-count complaint against Union Pacific Resources Company, seeking declaratory relief and specific performance. Natural has filed a motion for summary judgment with the court. Union Pacific has also presented a motion for summary judgment, seeking dismissal of Natural's complaint on discretionary grounds.[1] That motion is granted for the reasons stated below. In declining to exercise jurisdiction for discretionary reasons, the court need not and does not reach Natural's substantive motion for summary judgment.

### FACTS

The relevant facts, which are undisputed, are as follows. In mid–1987, Union Pacific notified Natural and NGPL–Trailblazer, a wholly-owned subsidiary of Natural, that it was about to sue Natural to recover damages for Natural's alleged tortious interference with Union Pacific's business and contractual relations with Colorado Interstate Gas Company, and for restraint of trade, monopolization, and attempted monopolization. Complaint, Exh. A.

Because Natural wished "to avoid or delay such suit, if possible, in order to permit [Union Pacific] and [Natural] to attempt to resolve this dispute," the parties entered into a two-year Tolling Agreement and Waiver, effective July 1, 1987. *Id.* Under the Tolling Agreement, Natural waived any limitations defense to Union Pacific's claims which it did not have as of July 1, 1987. Reply, p. 18. Effective July 1, 1989, the Tolling Agreement was extended for an additional year. *Id.* During this period, the parties failed to reach settlement. The Agreement required that Union Pacific give Natural 30 days notice prior to filing suit. Brittain Aff., p. 2.

Pursuant to the Tolling Agreement, Union Pacific sent written notice on April 24, 1990, of its intention to sue Natural in federal district court and/or state court in Nebraska barring resolution of their dispute within 30 days.[2] Natural received Un-

1. Because Union Pacific's motion seeks dismissal of Natural's complaint for threshold reasons unrelated to the merits of the case, it should be regarded as a motion to dismiss. The court converted the dismissal motion to one for summary judgment on June 4, 1990, in order to bring all relevant materials to its attention. See Transcript of Proceedings, June 4, 1990, 10:00 a.m. In granting Union Pacific's motion, the court does not reach the merits in any way,

despite the motion's designation as a summary judgment motion.

2. There is some confusion as to the precise date of Union Pacific's correspondence to Natural. The letter attached as Exhibit A to the complaint is dated April 23, 1990. But the letter that mentions the 30–day notice period—attached as Exhibit 1 to Kerry Brittain's affidavit—is dated

ion Pacific's letter on April 30, 1990. On May 16, 1990, before the 30–day period expired, Natural filed suit in this district. Natural's complaint seeks relief in four counts. Count I requests a "Declaratory Judgment That Natural Has Not Violated The Sherman Antitrust Act, 15 U.S.C. § 1 et seq., Or Any Other Antitrust Laws." Count II seeks a "Declaratory Judgment That Natural Did Not Interfere With UPR's Business or Contractual Relations." Count III asserts that Union Pacific's threatened lawsuit violates a Settlement Agreement in which Union Pacific allegedly agreed not to sue Natural. Count IV seeks reimbursement and indemnity for costs that Natural allegedly has incurred and will incur in defending a suit brought by the Colorado Interstate Gas Company.

On May 31, 1990, 30 days after Natural received written notice of Union Pacific's intention to sue, Union Pacific filed suit as promised in federal district court in Nebraska, asserting federal antitrust and tortious interference with contract claims. Union Pacific now asks that Natural's complaint before this court be dismissed. According to Union Pacific, Natural has launched a pre-emptive strike designed to deny Union Pacific the right to bring suit in its chosen forum. This, says Union Pacific, is an abuse of the Declaratory Judgment Act that need not and should not be permitted.

### DISCUSSION

■ The question presented by Union Pacific's motion is when an action should be dismissed in favor of one filed later. In general, federal courts have observed the "first to file" rule, under which the first suit has priority. *See, e.g., Columbia Pictures Industries v. Schneider*, 435 F.Supp. 742 (S.D.N.Y.1977). The Seventh Circuit, however, "has never adhered to a rigid 'first to file' rule." *Tempco Electric Heater Corp. v. Omega Engineering*, 819 F.2d 746, 750 (7th Cir.1987) (citations omitted). The *Tempco* court declined to apply the rule under circumstances similar to those before this court today.

In *Tempco*, Tempco Electric used an omega symbol on some of its products, which Omega Engineering believed to be an infringement of its trademark. Omega's counsel sent a letter asking Tempco to discontinue its use of the mark and threatening litigation if Tempco failed to respond within ten days. Some discussion ensued between counsel for the two companies, concluding with Tempco's refusal to discontinue using the mark. Omega sent another letter to Tempco, two weeks after the first, stating that Omega had no other alternative but to bring suit. On the day Tempco received the letter, it filed a declaratory judgment action. Omega's lawsuit followed four days later.

Omega moved to dismiss Tempco's suit on the ground that its own action involved the same issues, facts, and parties. The district court granted the motion, and the Court of Appeals affirmed. Noting that "federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction," the court held that "[w]here, as here, the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later." *Tempco*, at 747, 749.

The Court of Appeals arrived at this conclusion after examining the purposes of declaratory judgment actions. They are "to clarify[ ] and settl[e] the legal relations at issue" and to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.*, at 749. In essence, a federal court should grant declaratory relief "to prevent one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Id.* Omega had not engaged in such conduct. It "promptly filed suit to enforce its claim that Tempco had infringed its trademark. Thus, a declaratory judgment would serve no useful purpose . . ." *Id.*

April 24, 1990. The parties take no notice of the    discrepancy, which, in any event, is immaterial.

Not only would hearing Tempco's case have served no useful purpose; " '[t]he wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum.' " *Id.* (citations omitted). "The federal declaratory judgment is not a prize to the winner of the race to the courthouse." *Id.* (citations omitted). The rule set forth in *Tempco* applies to declaratory judgment actions designed to pre-empt not only infringement suits, but other lawsuits as well. *See, e.g., CNA Financial Corp. v. Home Indemnity Co.,* 703 F.Supp. 759 (N.D.Ill.1989) (indemnity bond action).[3]

Natural's action before this court is exactly the kind of pre-emptive strike disapproved by *Tempco.* Having received Union Pacific's letter on April 30, 1990, Natural knew full well that Union Pacific would bring suit by May 31, 1990. Like Omega in *Tempco,* Union Pacific promptly filed its action upon the expiration of the 30–day waiting period required by the Tolling Agreement. Union Pacific had clearly not "continually accus[ed] [Natural], to [its] detriment, without allowing [Natural] to secure an adjudication of [its] rights by bringing suit." *Tempco,* at 749. Nevertheless, Natural filed this action before the 30-day period expired.

That Natural's action anticipated the suit later filed by Union Pacific is beyond question. In its April 24, 1990 letter to Natural, Union Pacific announced its intention (barring settlement) to bring suit for restraint of trade, monopolization, and wrongful interference with Resources' business and contractual relations with Colorado Interstate Gas Company. Natural's complaint seeks declaratory relief that Natural did not violate the Antitrust Act and did not interfere in Union Pacific's business relations. "As is typical in a declaratory judgment case," Natural's arguments are the converse of Union Pacific's. *Inland Steel v. Van Leer,* 1990 WL 77994, 1990 U.S. Dist.Lexis 6565 (N.D.Ill.1990), p. 4.

Natural insists that *Tempco* does not apply here because it seeks affirmative as well as declaratory relief. It is true that Count III of the complaint requests "specific performance" of a Settlement Agreement negotiated earlier between the parties. But the gist of Count III is that Union Pacific, in the Settlement Agreement, waived its right to sue Natural. This allegation merely recasts an affirmative defense to Union Pacific's lawsuit as a claim for specific performance in Natural's. Count IV seeks indemnity for costs Natural has incurred and for damages it may incur in defending Colorado Interstate Gas Company's lawsuit. This claim is premature since it seeks future potential damages and depends upon the resolution of Union Pacific's lawsuit.[4]

Even if Count III could be regarded as an affirmative claim for relief, dismissal would nonetheless be warranted. In *Associated Mills v. Regina,* 675 F.Supp. 446 (N.D.Ill.1987), for example, Associated Mills ("AMI") moved to restrain Regina from prosecuting a lawsuit brought in another district six days after AMI filed its declaratory judgment here. The court denied the motion and dismissed the case under *Tempco.* AMI "argued that this case is distinguishable from *Tempco* because in this case, AMI has requested relief other than a declaratory judgment in its three-count complaint." *Associated Mills,* at 448.

The court rejected AMI's argument for several reasons:

First, as the court stated in *Tempco,* the mere fact that a party files its declaratory judgment action first does not give it a "right" to choose a forum ... Furthermore, AMI will be able to assert its additional claims as counterclaims in the New

---

3. In *CNA,* the defendant in the first-filed declaratory judgment action moved for transfer to the forum in which it filed its suit for affirmative relief. Finding the plaintiff before it to have engaged in a "pre-emptive litigation strike," the court dismissed the action outright, *sua sponte,* without deciding the motion to transfer.

4. As Natural itself noted in its Response, "if the Court agrees with Natural's reading of the release contained in [the Settlement Agreement], Count IV will be moot." Response, p. 30.

Jersey infringement action . . . Finally, in this Court's opinion, AMI's conduct in filing this declaratory judgment action amounted to nothing more than a pre-emptive strike. AMI should not be rewarded for winning the race to the courthouse.

*Id.* (citations omitted). These same reasons apply with equal force here. Natural has no inherent right to choose this forum. It can assert every "claim" in its complaint by way of counterclaim in Union Pacific's Nebraska action. And Natural may not expect this court to hear an action that amounts to nothing more than a pre-emptive strike.

■ Three further considerations especially disincline the court to hear Natural's case. First, "[i]t is especially important that courts not countenance the use of declaratory judgment suits to torpedo potential settlement discussions: 'Potential plaintiffs should be encouraged to attempt settlement discussions . . . prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an already drafted complaint.' " *Inland Steel, supra, quoting Columbia Pictures, supra,* 435 F.Supp. at 747–748. That is precisely what happened here. Natural filed suit before the expiration of the 30-day notice period, during which Union Pacific had expressed its hope "for further discussions." Brittain aff., Exh. 1.[5]

Second, "forum shopping ha[s] always been regarded as [a] proper bas[is] for departing from the [first-filed] rule." *E.E. O.C. v. University of Pennsylvania,* 850 F.2d 969, 976 (3rd Cir.1988). In *EEOC,* the University first filed suit in the District of Columbia Circuit, "kn[owing] the EEOC's enforcement action in the Eastern District of Pennsylvania was imminent, and that precedent in this [3rd] Circuit . . . might favor resolution of the dispute in favor of the EEOC." *Id.,* at 972. The Third Circuit declined to apply the first-filed rule under these circumstances.[6]

■ Here, Natural has asserted that the applicable statutes of limitations bar Union Pacific's claims. Complaint, ¶ 14(d). That defense appears more likely to succeed in Illinois than in Nebraska, where the relevant limitations period is four years, and where only longer limitations periods are borrowed. *See* Neb.Rev.Stat. § 25–215 (1985); *Flynn v. Longwell,* Civ.Act. No. 85–L–686, 1986 WL 8017 (D.Neb. July 14, 1986). A party "should not be permitted to distort the purpose of a declaratory judgment by using it as a vehicle to secure a forum of its own choosing." *Associated Mills, supra,* at 448. Natural may not do so here.

Finally, the nature of Union Pacific's claims militates against retaining jurisdiction over Natural's lawsuit: "[t]he 'first-filed' rule should not be mechanically applied against would-be anti-trust plaintiffs, whom Congress intends to have a broader than usual choice of venue." *Columbia Pictures, supra,* at 748; *Merle Norman Cosmetics v. Martin,* 705 F.Supp. 296, 300 (E.D.La.1988). Allegations of antitrust violations are at the heart of Union Pacific's action.

Notwithstanding the foregoing reasons for dismissal, Natural urges the court to take account of certain "equitable considerations" traditionally associated with motions to transfer—namely, convenience to the parties and witnesses, venue, the relative progress of the two lawsuits, and the like. But such considerations "should have been, and apparently were," addressed to the Nebraska court. *Tempco,* at 750, n. 6. Natural's motion to transfer is pending there, not here.

---

5. See also *Factors, Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2d Cir.1978) ("When the declaratory judgment action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiff's chosen forum.").

6. In *EEOC,* as in *Associated Mills,* the court refused to apply the first-filed rule even though the first-filed complaint sought affirmative injunctive relief as well as a declaratory judgment.

**316**

In any event, a cursory review of these considerations reveals that Natural does business in Nebraska; that the cause of action may or may not have arisen in Illinois; and that the Nebraska action has proceeded to the point where Natural has been ordered to answer Union Pacific's complaint. Natural insists that this court has been "immersed" in the case, but in fact the court has not reached the merits at all. Nor need it do so now. For the reasons stated above, the court declines to hear Natural's pre-emptive case. Union Pacific's motion to dismiss is hereby granted.