61 F.3d 906
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
LAKETON REFINING CORPORATION, Plaintiff-Appellee/Cross-Appellant,
v.
TECUMSEH PIPE LINE COMPANY, Ashland Oil, Inc., Atlantic
Richfield Company, and Union Oil Company of
California, Defendants-Appellants,
Cross-Appellees.
 Nos. 94-3698, 94-3955.
 United States Court of Appeals, Seventh Circuit.
 Argued May 15, 1995.
Decided July 18, 1995.
 
 Before CUMMINGS, BAUER and CUDAHY, Circuit Judges.
 
 ORDER
 
 1
 In September 1994, Laketon Refining Corporation filed a complaint for a declaratory judgment against Tecumseh Pipe Line Co., Ashland Oil, Inc., Atlantic Richfield Company, and Union Oil Company of California as to the rights of the parties under Laketon's 1994 lease of Tecumseh's storage terminal at Hartsdale, Indiana (the "Hartsdale terminal"). Two days before the commencement of the lease and 22 months after its execution, Tecumseh notified Laketon that Tecumseh's pre-approval was required before Laketon could store in the terminal oil to which it did not hold "specific title." According to Laketon, the Hartsdale terminal remains empty because of the pre-approval dispute. The complaint asked the district court to interpret the lease as permitting Laketon to store crude oil and asphalt in the Hartsdale terminal whether or not those commodities were specifically titled to Laketon.
 
 FACTS
 
 2
 The Tecumseh Pipe Line (the "Pipe Line") runs east from the defendants' Hartsdale terminal to Cygnet, Ohio. The Pipe Line was the sole source of crude oil for Laketon's refinery. In 1992 Tecumseh planned to sell the Pipe Line to NIPSCO Industries, Inc., which was planning to convert it from oil to natural gas. Laketon objected to the plan, which would cut off its crude oil supply. Subsequently Tecumseh sued Laketon in federal district court, claiming interference with prospective business relations and breach of contract. Laketon countersued.
 
 
 3
 In November 1992, the parties agreed to settle the litigation and Laketon dropped its objections to the sale of the Pipe Line. As part of the settlement, Tecumseh agreed to give Laketon a five-year lease of the Hartsdale terminal. Thereafter Laketon could purchase the terminal at a price set by an independent appraisal. Tecumseh's owners, Ashland Oil, Inc., Atlantic Richfield Co., and Union Oil, guaranteed Laketon that they and Tecumseh would comply with the lease and pay reasonable attorney's fees and all other costs and expenses Laketon might incur in enforcing the guaranty.
 
 
 4
 Plaintiff Laketon states that it kept its part of the bargain but that Tecumseh did not. Two days before the lease was to begin Tecumseh informed Laketon that the lease forbade it from storing any oil at the Hartsdale terminal "unless specifically titled to Laketon." Laketon claims that no such restriction is found in the lease and that because of Tecumseh's interpretation Laketon is unable to continue its efforts to sell contracts to store third-party oil at the Hartsdale terminal.
 
 
 5
 In view of Tecumseh's interpretation of the lease, Laketon filed this diversity action requesting a declaration of Laketon's rights under the lease and also requesting attorney's fees and expenses pursuant to the above-mentioned guaranty. The district court granted the requested declaratory relief in favor of Laketon but denied its request for attorney's fees.
 
 
 6
 Thereafter Tecumseh filed the present appeal and Laketon filed a cross-appeal with respect to the denial of attorney's fees. This Court subsequently consolidated the two appeals. Since this litigation raises questions of law involving interpretation of the lease, Laketon and Tecumseh agree that de novo review is appropriate.
 
 ANALYSIS
 Laketon's Right to Store Third-Party Oil
 
 7
 The question before us is whether, as held by the district court, the lease allows Laketon to store third-party oil at the Hartsdale terminal without Tecumseh's express permission. Laketon relies on paragraph 8 of the lease which provides:
 
 
 8
 The Hartsdale terminal is to be used by Laketon only for the purpose of storage of crude oil in the tanks described in Exhibit A, and subject to the written approval of Tecumseh, for such other uses as may be permitted under applicable law, rules and regulations.
 
 
 9
 Laketon argues that paragraph 8 is dispositive because it specifies what can be stored at the Hartsdale terminal, "crude oil," with no limitation or qualification based on ownership.
 
 
 10
 Tecumseh, on the other hand, asserts that paragraph 13 of the lease is controlling. It provides:
 
 
 11
 This lease being entered into as part of a settlement agreement, Laketon may assign its rights and obligations under the lease, sublet the Hartsdale terminal, or permit the use or occupancy of the Hartsdale terminal by other third parties only with prior approval of Tecumseh. Tecumseh may assign its rights and obligations under this lease to Ashland, ARCO, or Unocal without Laketon's prior approval.
 
 
 12
 Tecumseh contends that storage of third-party oil constitutes "use" of the terminal by a third party and that paragraph 13 therefore requires that Laketon obtain Tecumseh's prior permission. The district court rejected this broad reading of "use" in the context of paragraph 13, which "addresses the transfer of control over the terminal, not the contents of the terminal which is a topic governed by paragraph 8." Tr. at 45. Therefore, the court reasoned, as long as Laketon does not surrender control of the facility, the storage of third-party oil is not forbidden under paragraph 13. This is the more natural reading of the two disputed paragraphs and the lease as a whole.
 
 
 13
 When Laketon stores third-party oil, it is essentially acting as a bailee. As such, Laketon continues to "use and occupy" the facility alone despite the presence of oil in the tanks to which Laketon does not have title. Moreover, if as Tecumseh insists Laketon needed Tecumseh's permission to store oil not "specifically titled to Laketon," a myriad of problems would arise. If Laketon purchased oil as part of joint venture, could it store the oil without Tecumseh's permission? What if Laketon purchased oil on credit and a bank retained a security interest in the oil? In its argument before the district court, Tecumseh said that Laketon would not need prior permission in that case, but gave no principle or criteria for distinguishing a security interest from any other property interest that a third party might have in stored oil. This would pose a real problem for Laketon if Tecumseh chose to be obstinate because, as Tecumseh points out, the ability to refuse permission is unconditional under the terms of the lease. Tecumseh's reading creates large potentially problematic gray areas, which are nowhere addressed or resolved in the lease, and makes its reading all the more implausible.
 
 
 14
 For the first time on appeal and only in its reply brief, Tecumseh asserts that paragraph 12(a) of the lease[1] allows Laketon to transfer control of the facility without Tecumseh's permission. Therefore, according to Tecumseh, paragraph 13 is not about "transfer of control," and "use" in paragraph 13 must be given a broader meaning than that proposed by Laketon and adopted by the district court.
 
 
 15
 Tecumseh's belated argument is completely unconvincing. Paragraph 12(a) merely allocates to Laketon the duty to "provide routine operation, maintenance and repair services" so that the terminal remains "in good operating condition" during the term of the lease and "in substantially the same condition" at the end. By allowing Laketon to contract with any third party to provide such services, the paragraph does not authorize transfer of control over the facility.
 
 Attorney's Fees and Costs
 
 16
 Laketon obtained a guaranty from Tecumseh's three owners to safeguard its contractual rights. In paragraph 2 of the guaranty, the owners promise compliance with all provisions of the lease applicable to Tecumseh, and in paragraph 11 they agree to pay "reasonable attorney's fees and all other costs and expenses which might be incurred by Lessee in the enforcement of or in any attempt to enforce this Guaranty, whether by action at law or otherwise."
 
 
 17
 Despite the plain guaranty, the district court denied Laketon's request for fees in both its oral ruling and in its written order denying Laketon's rule 59(e) motion to amend the judgment. The court reasoned that because Tecumseh never actually breached the lease but merely "misread" it, Laketon's action was not one to "enforce" the guaranty.
 
 
 18
 The district court's dichotomy is unconvincing. Tecumseh did not merely misread the lease, but asserted a right to prior approval inconsistent with a proper reading. This was an act of noncompliance. While Tecumseh had yet to bring a coercive action to enforce its alleged right, Laketon's declaratory judgment suit was nonetheless a proper vehicle to enforce the lease and "terminate and afford relief from the uncertainty, insecurity, and controversy" resulting from Tecumseh's assertion of a nonexistent right. Tempco Elec. Heater Corp. v. Omega Engineering, 819 F.2d 746 (7th Cir. 1987), quoting Borchard, Declaratory Judgments 299 (2d ed. 1941).
 
 
 19
 The district court correctly held that the lease between the parties allows Laketon to store crude oil and asphalt in the Hartsdale terminal whether or not it holds title to those substances. In view of paragraphs 2 and 11 of the guaranty, Laketon is entitled to its attorney's fees and expenses.
 
 
 20
 The judgment below is affirmed in part and reversed and remanded to determine Laketon's reasonable attorney's fees and costs in this declaratory judgment action.
 
 
 
 [1]
 Paragraph 12(a) of the lease provides:
 Laketon shall pay all utility costs associated with the Hartsdale terminal and shall provide routine operation, maintenance and repair services necessary to operate and maintain the Hartsdale terminal in good operating condition, taking into account the age of the real and personal property at the Commencement Date, and in accordance with applicable laws and regulations. Laketon may provide these services itself or it may contract with any third party to provide such services. Laketon shall return the fixed assets at the Hartsdale terminal to Tecumseh at the expiration of the term of this lease in substantially the same condition the assets were in at the Commencement Date, as cleaned-up and remediated by Tecumseh pursuant to Paragraph 7(c)(1)((c))((1)) hereof, ordinary wear and tear excepted.