ESSEX GROUP, INC., a Michigan corporation; and Superior Telecommunications, Inc., a Delaware corporation, Plaintiffs,

v.

COBRA WIRE & CABLE, INC., a Pennsylvania corporation, Defendant.

No. 1:00–CV–34.

United States District Court, N.D. Indiana, Fort Wayne Division.

June 23, 2000.

David P. Irmscher, Baker and Daniels, Fort Wayne, IN, R. Terrance Rader, William Cosnowski, Jr., Rader Fishman and Grauer, Bloomfield Hills, MI, Ellen A. Efros, Rader Fishman and Grauer PLLC, Washington, DC, for Essex Group, Inc., a Michigan corporation, plaintiff.

David P. Irmscher, R. Terrance Rader, William Cosnowski, Jr., Ellen A. Efros, for Superior Telecommunications Inc., a Delaware corporation, plaintiff.

Thomas A. Herr, Barrett and McNagny, For Wayne, IN, Andrew B. Clauss, Patricia Sons Biswanger, H. Robert Fiebach, Coven and O'Connor, Philadelphia, PA, for Cobra Wire & Cable Inc., a Pennsylvania corporation, defendant.

### MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

Plaintiffs Essex Group Inc. ("Essex") and Superior Telecommunications, Inc. ("Superior") (collectively herein "the Plaintiffs") filed this action for a declaratory judgment asserting that its use of the COBRA trademark did not infringe upon the Defendant's alleged trademark rights in the COBRA trademark. Presently before

the court is Defendant, Cobra Wire & Cable, Inc.'s ("CWC") "Motion to Dismiss, Or, in the alternative, to Transfer" filed on May 19, 2000. On June 15, 2000, Plaintiffs responded and, on June 20, 2000, CWC replied.

For the following reasons, CWC's Motion to Dismiss will be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

Essex is a Michigan corporation with its principal place of business in Fort Wayne, Indiana. Superior, Essex' sister corporation, is a Delaware corporation having its principal place of business in Atlanta, Georgia. Defendant CWC is a Pennsylvania corporation with its principal place of business in Hatboro, Pennsylvania.

The parties are competitors in the wire and cable industry in that they both market, distribute and sell wire and cable products to the same consumers in the wire and cable market. On January 21, 2000, Plaintiffs filed their initial Complaint for Declaratory Relief seeking a declaration from this Court that (1) their use of the COBRA trademark does not infringe any alleged trademark rights in the trademark COBRA WIRE AND CABLE, claimed by CWC; and (2) CWC's alleged trademark, via United States Trademark Registration No. 2,142,089, for COBRA WIRE & CABLE was fraudulently obtained and unenforceable. Subsequently, on April 13, 2000, Plaintiffs filed their "First Amended Complaint for Declaratory Relief"[1] in which they clarified their request for relief and added a request that this Court declare that CWC has no right to use the COBRA or COBRA WIRE AND CABLE trademark to promote, market, or sell telecommunication products.

Leading up to the filing of this action are a series of events and negotiations, only the general spirit of which need be recounted herein. Beginning in 1999, the parties engaged in negotiations whereby CWC would license the COBRA trademark to the Plaintiffs for their use in the manufacture, marketing, distribution and sale of "Category V" computer cable. Although the parties engaged in these negotiations throughout 1999, they reached no agreement and, by Fall 1999, ceased talks altogether. In December 1999, CWC contends that it discovered that the Plaintiffs were producing, marketing, and distributing cable and wire products using the COBRA brand name. This discovery inspired the first of two "cease and desist" letters from CWC's counsel to the Plaintiffs advising the Plaintiffs that they were in violation of United States trademark law and that "unless you [the Plaintiffs] immediately cease and desist use of the COBRA mark and advise me within five (5) days of the date of this letter that you will do so we will take all appropriate legal action against your company, including, without limitation, an action for damages and reimbursement of legal fees incurred by our client in connection with prosecution of the claim, since your use will constitute willful infringement." (See Complaint, Exh. B, January 5, 2000; Declaration of William Cosnowski, ¶ 2).

Thereafter, on January 13, 2000, CWC forwarded a second "cease and desist" letter to the Plaintiffs. Again, this letter emphasized that the Plaintiffs' failure to cease use of the COBRA mark would result in legal action. (See Complaint, Exh. B, January 5, 2000; Declaration of William Cosnowski, ¶ 2).

On January 21, 2000, within seven (7) days of receiving the last letter, Plaintiffs filed the instant action seeking declaratory relief. Plaintiffs did not, however, serve the Defendant with a summons and a copy of the Complaint until March 14, 2000. Plaintiffs did notify Defendant's counsel in writing on January 31, 2000 that it had filed a Complaint in this court and provided a courtesy copy of that Complaint to

---

**1.** Hereinafter, all references to "the Complaint" refer to the "First Amended Complaint" filed by the Plaintiffs on April 13, 2000.

counsel. The letter also recited the Plaintiffs' belief that CWC's claims lacked merit and presented an offer from the Plaintiffs to attempt to resolve the issue amicably without court intervention.

After Plaintiffs notified defense counsel of the impending lawsuit, the parties attempted for several months to resolve the dispute to no avail. (*See* Plaintiffs' Response, Exhibits C–E). On May 18, 2000, after a complete breakdown in settlement negotiations, CWC initiated an infringement action in the Eastern District of Pennsylvania styled *Cobra Wire & Cable, Inc. v. Essex Group, Inc., et al,* Civil No., 00 CV 2555. The issue presented via CWC's motion is whether, in light of the pending infringement action in Pennsylvania, this Court should decline to exercise jurisdiction over the Plaintiffs' declaratory judgment action.

### DISCUSSION

■ The Declaratory Judgment Act ("the Act") provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This statute, however, "does not dispense with the Article III case or controversy requirement ..., nor does it supply the court with subject matter jurisdiction," *Nationwide Ins. v. Zavalis,* 52 F.3d 689, 692 (7th Cir.1995) (citations omitted), for even when a district court has subject matter jurisdiction, it is not required to declare the rights and relations of parties. *Id.* (citing *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942)); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.,* 819 F.2d 746, 747 (7th Cir.1987) ("It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction."). Instead, district courts have wide discretion to decline to hear such actions. See

*North Shore Gas Co. v. Salomon Inc.,* 152 F.3d 642, 647 (7th Cir.1998) ("As is apparent from the use of the word 'may,' the Act does not obligate courts to issue declaratory judgments.").

CWC argues that this Court should exercise its discretion and dismiss the Complaint on the grounds that the Plaintiffs raced to the courthouse and forum-shopped. The heart of CWC's argument is based on the fundamental principle that "a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way." *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 577–578 (7th Cir.1994) (quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 10 F.3d 425, 431 (7th Cir.1993)). Thus, according to CWC, because the Plaintiffs initiated the declaratory judgment action in anticipation of CWC filing an infringement action, the Plaintiffs' lawsuit, although filed first, should give way to CWC's later filed infringement action.

■ Generally, when mirror-image suits are filed in two federal districts, the first case filed takes priority. See, *Natural Gas Pipeline Company of America v. Union Pacific Resources Company,* 750 F.Supp. 311 (N.D.Ill.1990). However, the Seventh Circuit has never rigidly applied the "first in time" rule. *Trippe Manufacturing Company v. American Power Conversion Corporation,* 46 F.3d 624 (7th Cir. 1995); *Tempco,* 819 F.2d at 748; *Tamari v. Bache & Co.,* 565 F.2d 1194 (7th Cir. 1977). Indeed, the Seventh Circuit has expressly disfavored applying the rule where, as is alleged here, the declaratory judgment action, though filed first, is filed in anticipation of litigation by the other party. *Allendale,* 10 F.3d at 431; *NUCOR Corp.,* 28 F.3d at 577; *Tempco,* 819 F.2d at 749; see also, *Successories, Inc. v. Arnold Palmer Enterprises,* 990 F.Supp. 1044 (N.D.Ill.1998), *Natural Gas,* 750 F.Supp. 311.

In line with this rule, CWC urges this court to find the instant case analogous to the facts in the Seventh Circuit's decision in *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc,* wherein the Seventh Circuit affirmed the district court's decision to decline jurisdiction over a declaratory judgment action. Not surprisingly, the Plaintiffs argue that the instant case is far from analogous to the *Tempco* facts. Thus, an appropriate starting point is with the *Tempco* case itself.

In *Tempco,* the parties, as in this case, were engaged in a dispute over the use of a mark. After negotiations over the mark stalled, Omega, the accusing party, sent Tempco a letter stating it had no alternative but to bring suit. Tempco filed a declaratory judgment action the same day it received the letter. Four days later Omega filed a mirror image infringement suit in another district court. Omega then moved to dismiss Tempco's complaint. The *Tempco* Court found that where, "the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later." *Tempco,* 819 F.2d at 749.

Although the Plaintiffs vigorously dispute it, the facts before this Court are materially similar to *Tempco.* Here, Plaintiffs filed their declaratory judgment lawsuit in Indiana seven days after CWC transmitted the second cease and desist letter threatening to bring legal action. Plaintiffs then delayed prosecuting that lawsuit and serving CWC with process in hopes that the parties could amicably resolve the dispute. This procedure, i.e., filing a lawsuit in anticipation of settlement, however, is counterintuitive to general litigation practice. The litigation process is wrought with contention and thus, the initiation of litigation typically seeks to estrange the parties rather than make them more amenable to settlement. Yet, if the Plaintiffs desired to amicably settle the dispute, they could have sought to do so without filing a lawsuit and congesting the court docket by failing to actively prosecute it until settlement negotiations broke off. Instead, the Plaintiffs picked their litigation forum, waited to prosecute the lawsuit, and utilized the lawsuit to encourage settlement discussions. Presented in this fashion, nothing before this court indicates that the Plaintiffs' swift action in filing this action in Indiana was anything more than the "race to the courthouse" sanctioned in *Tempco. Tempco,* 819 F.2d 746, 750.

Since *Tempco,* courts within this circuit have recognized two policy arguments supporting the dismissal of a declaratory action brought solely in anticipation of an infringement suit. "First, allowing a potential defendant to make a procedural preemptive strike robs the natural plaintiff of his ability to select his forum." *Eli's Chicago Finest, Inc. v. The Cheesecake Factory, Inc.,* 23 F.Supp.2d 906, 909 (N.D.Ill.1998) (citing *Allendale,* 10 F.3d at 431); *Publications International Ltd. v. McRae,* 953 F.Supp. 223 (N.D.Ill.1996). "Second, prohibiting a 'race to the courthouse,' encourages settlement and discourages costly duplicate litigation." *Id. (citing Leaf, Inc. v. Clay White Associates, Inc.,* 1996 WL 580876 (N.D.Ill.)).

In this case, the second rationale is particularly compelling. Rather than contacting CWC for the purpose of negotiation, Plaintiffs responded to CWC's accusation of trademark infringement by rapidly bringing suit in hopes of securing a favorable forum. Only after it secured the forum did the Plaintiffs seek to negotiate. As at least one court has noted, "[i]f the Court were to allow such maneuvering, litigants would have no alternative but to quickly file suits in the forum of their choice. Delay caused by a good faith effort at negotiation could deprive a litigant of a favorable venue. Such an incentive system would be highly inefficient." *Eli's,* 23 F.Supp.2d at 909.

This notwithstanding, the Plaintiffs argue that because CWC waited nearly four months after it learned of the declaratory

judgment action to file its infringement action in Pennsylvania, the rationale of *Tempco* cannot apply to this case. Indeed, in *Tempco*, the court cited the fact that the defendant promptly filed the infringement action after learning of the earlier filed declaratory judgment action as evidence that "no useful purpose" was served by prosecuting the declaratory judgment action. *Tempco*, 819 F.2d at 749. However, in light of the circumstances surrounding the delay in this case, i.e., the Plaintiffs willingness, after having secured an Indiana forum, to engage in settlement negotiations, it is reasonable that CWC would delay both the burden and expense of filing its infringement action until it was certain that the negotiations bore no fruit. Thus, if this court penalized CWC for such conduct, it would penalize CWC for attempting to mediate its dispute in the first instance rather than waiting until the parties have expended much time and effort in the courts before doing so. This Court is not prepared to undermine the settlement process, which it routinely emphasizes in all of its cases, in this manner.

Finally, Plaintiffs makes several arguments supporting an Indiana venue, rather than a Pennsylvania venue for this action, not the least of which is that it is inconvenient for them to litigate in Pennsylvania and that this court's docket provides more expedient relief than would be available in the Eastern District of Pennsylvania.[2] The court has no doubt that these very factors were considerations in the Plaintiffs' decision to secure an Indiana forum by promptly initiating this lawsuit. Yet, regardless of whether Indiana is the more

appropriate venue for the resolution of these issues, it is inappropriate for the Plaintiffs to file for a declaratory judgment for the purposes of forum-shopping. If this Court were to allow litigants to abuse the Declaratory Judgment Act for the purpose of forum-shopping, it would condone precisely what *Tempco* advised against: "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." *Tempco*, 819 F.2d at 749 (quoting *American Automobile Insurance Co. v. Freundt*, 103 F.2d 613, 617 (7th Cir.1939)).

In sum, litigation of both cases in separate districts would be a waste of judicial time and resources. "While we do not mean to fault the parties for their attempts to protect themselves, from society's point of view it is essentially irrelevant which one of them bears the expense and inconvenience of litigating in a distant forum—someone must." *Tempco*, 819 F.2d at 749. Here, the better alternative is to allow the Pennsylvania action to proceed. The broader relief requested by the Defendant in the Pennsylvania suit would certainly address the relief sought by in this action and Plaintiffs have provided this Court no reason to anticipate that Plaintiffs would be foreclosed from interposing their claims as counterclaims and/or defenses in the Pennsylvania action. In any event, the Court is more concerned with the circumstances surrounding the filings.

CWC calls the Plaintiffs' action a preemptive strike. Indeed, as this court has already noted, it has the hallmark of

---

**2.** Notably, CWC, a solely-owned business entity, also makes the argument that Indiana is inconvenient and would result in a tremendous financial burden to the business if Indiana were found to be a proper forum. In response, Plaintiffs make the gratuitous argument that "[a]lthough CWC has been well aware of this action since January 21, 2000, it has waited until now to complain that the forum is 'inconvenient.'" In this court's view, it is the Plaintiffs who have delayed this litigation and made the decision, for tactical reasons or otherwise, not to serve CWC with

process until March 14, 2000. Although CWC may have had actual knowledge of the lawsuit prior to that date, the law does not require it to undertake any action until it has been properly served under the Federal Rules of Civil Procedure. Further, once served, CWC promptly appeared and has prosecuted this action, including filing its Motion to Dismiss and/or Transfer. To the extent Plaintiffs wish to pursue these arguments in the Pennsylvania court in the form of a motion to transfer pursuant to 28 U.S.C. § 1404(a), nothing in this order forecloses it.

such a suit and this fact provides sufficient pause to this Court to warrant declining jurisdiction. Therefore, because the Court concludes that exercising jurisdiction is inconsistent with the purposes of the Declaratory Judgment Act, this case is DISMISSED.

### CONCLUSION

For the reasons stated above, this Court has determined that the action pending is a preemptive attempt by Plaintiffs to secure venue in anticipation of litigation by the Defendant. The Court therefore declines to exercise its jurisdiction over Plaintiff's claims. Defendant's motion to dismiss is GRANTED.