**GB ELECTRICAL, INC., Plaintiff,**

v.

**ERICO PRODUCTS, INC., Defendant.**

No. 91–C–673.

United States District Court,
E.D. Wisconsin.

Oct. 16, 1991.

Andrew J. Nilles, Nilles & Nilles, S.C., Milwaukee, Wis., for plaintiff.

John W. Renner, Renner, Otto, Boisselle & Sklar, Cleveland, Ohio, for defendant.

## DECISION AND ORDER

WARREN, Senior District Judge.

Before the Court are: 1) the plaintiff's motion to enjoin prosecution of the defendant's later-filed action; and 2) the defendant's motion to dismiss the plaintiff's de-

---

claratory judgment proceeding in the Eastern District of Wisconsin, or in the alternative, to transfer it to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Both the plaintiff, GB Electrical, Inc. ("GB"), and the defendant, Erico Products, Inc. ("Erico"), are manufacturers of steel fasteners. These fasteners are used to connect pipes, conduits, and other similar components to the structural parts of buildings. The fasteners are used largely in electrical systems, but may also be used in other areas of construction; for example, to support suspended ceilings.

Erico manufactures and markets its line of more than 400 fasteners under the registered trademark CADDY. In order to distinguish the fasteners from one another, Erico has implemented an alphanumeric coding system. A combination of letters and numbers are placed on the fasteners' packages to facilitate consumers' identification of the proper product. Erico also has a catalog in which all its CADDY fasteners are pictured alongside their alphanumeric codes.

GB manufactures and distributes its fasteners under the trade name HIT. In the HIT catalog, the fasteners are pictured under a numbered heading. The numbered heading serves to identify the fastener in the catalog. Next to the pictures are Erico's corresponding alphanumeric codes, with the words "comp. no." preceding the codes.[1] Another part of the catalog contains a cross-reference list demonstrating which GB HIT codes match Erico's CADDY codes.

Both catalogs are widely distributed in the electrical supply field. Erico has alleged that substantial portions of GB's catalog have been taken from its catalog verbatim and that the structure and layout of GB's catalog is likewise identical to Erico's. Since Erico's catalog is copyrighted, Erico has claimed that GB's use constitutes copyright infringement. Erico's objections to GB's use of its alphanumeric codes and alleged infringement of its copyrighted catalog form the basis for the ensuing litigation.

On December 5, 1990, Erico's attorney sent a letter to GB's Vice President of Marketing and Sales, requesting that GB stop using the same alphanumeric designations on its fasteners as Erico used in its CADDY line. In the letter, allegations of unfair competition and copyright infringement were made. Erico indicated that it was involved in litigating a similar issue against B–Line Systems, Inc., one of its competitors, in the Northern District of Illinois. It expressed hope that GB would be able to resolve the current situation short of Erico's having to file another lawsuit.

GB responded in a letter dated January 3, 1991. It denied that there was any infringement or unfair competition. Erico refuted GB's response through another letter dated January 18, 1991. It did not agree with GB's conclusion that use of the alphanumeric designations did not violate any trademark or copyright law. Rather, Erico insisted that GB "immediately stop using Erico's trademarks on its packaging."

There was no further communication between the parties until June 3, 1991, when Erico sent another letter to GB, seeking assurances that GB would cease using alphanumeric parts designators on its labels. If it refused to do so, Erico threatened to sue and indicated that it expected some type of response within 15 days. In a telephone conference on June 13, Erico maintained that it would sue GB within two weeks if GB did not change its packaging.

After a week had passed with no further word from Erico on its impending lawsuit, GB's counsel contacted Erico's counsel on June 21 and asked where the suit would be brought. Erico's counsel answered that he had not decided that yet. Due to the vague response, GB's counsel feared that the threat of a lawsuit within two weeks was merely another delaying tactic on Erico's

---

1.  The term "comp. no." is the abbreviation for "competitive number."

part. He also suspected that if the suit was filed, the venue would be the Eastern District of Wisconsin.

Having reason to believe that Erico would not file suit in the near future, GB filed a complaint in this Court seeking a declaratory judgment against Erico on June 23, 1991. It stated a need to clarify its rights to use Erico's CADDY alphanumeric system on its products and in its catalog. It had not received any service of process from Erico and claimed that it filed its action to stop Erico from further threats of legal action. Two days later, exactly two weeks after the June 13 telephone conference, Erico filed a trademark infringement, copyright infringement, and unfair competition action in the Northern District of Ohio.

Jurisdiction for the infringement suit would have been proper in the Eastern District of Wisconsin under 28 U.S.C. § 1400; thus, Erico could have filed a counterclaim to GB's declaratory action. GB has moved this Court to enjoin the prosecution of the action in Ohio since the Wisconsin claim was filed first. Erico alleges that GB preempted its right to select a forum and moves that the declaratory judgment be dismissed or, in the alternative, transferred to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a).

## II. APPLICABLE LAW

It is well settled that a district court has discretion to dismiss a declaratory judgment action, even when it has jurisdiction over that action. *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1217 (7th Cir.1980). The question that has been raised today is whether a court should dismiss or transfer a declaratory judgment action when another lawsuit that arises out of the same factual scenario is filed in another district two days subsequent to the filing of the original action.

Although some circuits have adopted a strict "first to file" rule, the Seventh Circuit has declined to follow their lead. Rather, in *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir.1987), the "first to file" approach was explicitly rejected. The appellate court held that such a rule would encourage parties fearful of being sued in a foreign venue to file a declaratory judgment first, thus securing their choice of forum. Although application of the "first-to-file" rule would eliminate the waste of judicial resources resulting from simultaneous litigation of the same issue in two different courts, the *Tempco* court found that the cost of the rule, "which will encourage an unseemly race to the courthouse and, quite likely, numerous unnecessary suits—is simply too high." *Id.* at 750.

A synopsis of the facts in *Tempco* follows: Omega, Tempco's competitor, objected to Tempco's usage of the Greek letter omega ("Ω") on its devices. Omega had a federally registered trademark which contained the Ω and believed that Tempco's use of the letter constituted trademark infringement.

On April 8, 1985, Omega's counsel sent a letter to Tempco, demanding that it stop using the Ω in its products. The letter contained a demand for a response within 10 days and a threat that litigation would commence if there was no reply. Eight days later, when Tempco had not responded, Omega sent out a similar letter, with the deadline for response shortened to 48 hours. The next day, presumably April 17, both Tempco's president and counsel conveyed their disagreement to Omega's allegations and their intention to continue using the Ω as part of Tempco's marketing strategy.

On April 22, Omega's counsel became aware of Tempco's position. That day, he sent Tempco one more letter, which stated that Omega had no choice but to file an action protecting its interests. Tempco received this letter on May 2 and filed its declaratory judgment action in the Northern District of Illinois later that day. Omega filed its infringement action four days later in the District of Connecticut. The Illinois district court granted Omega's motion to dismiss the declaratory action, since it involved the same parties, facts, and issues as the Connecticut proceedings.

### III. ANALYSIS

Erico has cited to *Tempco* in its effort to show that the first to file rule is not applicable in the Seventh Circuit. In response, GB claims that *Tempco* can be distinguished from the present case. The dispute in *Tempco* lasted approximately one month—from April 8, the time the cease-and-desist letter was mailed, until May 6, the date Omega's suit was filed. In the present case, Erico sent its first letter to GB on December 5, 1990, yet it delayed filing its lawsuit for almost seven months. GB further claims that Erico has characterized its actions as "jumping the gun," when in reality, all it sought to do was resolve a long and drawn out dispute over the labelling of its products.

However, Erico noted that on June 13, 1991, one of its representatives stated in a telephone conference that it would bring its suit within 2 weeks if GB did not change its labels. Since Erico's infringement action against GB was filed in the Northern District of Ohio exactly fourteen days later, on June 27, 1991, Erico claimed that it was not engaging in dilatory tactics. Rather, it was taking the only course of action open to it, since settlement negotiations had broken down and there was no hope of resolving the matter outside of court.

In turn, GB has accused Erico of hand-picking potential defendants in lawsuits. At the time the first notice was sent to GB, Erico was engaging in litigating a similar claim against a competitor in the Northern District of Illinois. Moreover, Erico sent out a cease-and-desist letter to another competitor on June 3, 1991, the same date contact was reinitiated with GB after a 5 month hiatus. GB asserts that Erico was waiting to sue when circumstances were most favorable to it.

■ This Court interprets *Tempco* as setting forth some considerations to which a district court must give weight, but not as promulgating a hard and fast rule. The Seventh Circuit indicated that the district courts must use their discretion in dismissing first-filed actions, keeping in mind the goal of preventing parties from racing to the courthouse in an effort to select the forum of their choice. Certain cases may warrant dismissal, but a court need not dismiss every action seeking a declaratory judgment that has a lawsuit following close on its heels. Therefore, having evaluated the facts of the present case, the Court must apply *Tempco's* precedent to those facts.

In *Tempco*, the threat of a lawsuit was communicated to the parties only one month before the actual suit was filed. In this case, Erico notified GB of the alleged infringement in December of 1990, yet chose to wait nearly seven months before filing suit. Moreover, within that seven month time span were five months of complete silence between the parties.[2] From these facts, it appears that Erico, which was engaged in litigation in one federal court, did not want to invest its resources in another lawsuit if an unfavorable outcome were to result in the pending proceedings. Rather, it chose to wait until it achieved a favorable result in the Northern District of Illinois. Four days later, it reinitiated contact with GB. However, it must also be noted that GB did not even attempt to contact Erico during that time period, and did not file a declaratory action then.

In *Tempco*, the Seventh Circuit noted that "a federal court may grant a declaratory judgment to prevent one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Tempco*, 819 F.2d at 749. In that case, however, there was no history of delay and threats with long periods of silence. Omega indicated that it would sue, and it filed suit within a month. In the present case, Erico sent out written demands such as "expect[ing] a written response within 30 days" and "immediately stop using ERI-

**2.** The last line of Erico's letter of January 18, 1991 reads, "We repeat our demand that your client immediately stop using ERICO's trademarks on its packaging." On June 3, 1991,

Erico sent GB another letter beginning, "I note I have no reply to my letter of January 18, 1991." The consent judgment in *Erico Products, Inc. v. B-Line Systems, Inc.* is dated May 29, 1991.

CO's trademarks." However, its conduct belies its urgency.

■ In spite of these facts, the Court feels bound by the spirit of *Tempco* to dismiss the proceedings in the Eastern District of Wisconsin. At this point in time, an actual lawsuit has been filed. A declaratory judgment, which would secure an adjudication of GB's rights, would serve no purpose, now that such an adjudication is taking place in the Northern District of Ohio. While Erico was less than diligent in its prosecution of its case against GB, the fact remains that it had explicitly notified GB of its intent to sue within fourteen days of June 13. At no previous time had there been a concrete date set for the commencement of litigation. Therefore, GB should have been on notice that Erico was about to file suit. Furthermore, when GB's counsel telephoned Erico's counsel on June 21, there was no discussion about whether there would be a suit at all, only about where the suit would be brought. Although GB could have waited to see if Erico was bluffing, it took the risk of assuming that Erico did not intend to sue at all. Finally, GB's counsel has averred that on June 21, he thought that Erico would not sue on June 25, or that Erico would sue in the Eastern District of Wisconsin. Therefore, he knew that there was a possibility of a suit within days, even if he did not think that it would come about or guessed the wrong forum.

If Erico had not filed its complaint by June 25, or if GB had filed its declaratory action before receiving Erico's letter of June 3, this Court would be able to disregard *Tempco* and allow GB to litigate its claim in its choice of forum. However, the facts of the present case demand that the Court do otherwise. The declaratory action was filed at a point when the parties should have realized that litigation was imminent, since there appeared to be no hope of settling the matter outside of court. The Seventh Circuit has noted that "[t]he purposes of declaratory judgments are to 'clarify and settle the legal relations at issue' and to 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'"

*Tempco,* 819 F.2d at 749, quoting Borchard, *Declaratory Judgments* 229 (2d ed. 1941). After a case has "ripened" past a certain point, a declaratory judgment ceases to serve any useful purpose. Erico's filing of its lawsuit in the Northern District of Ohio has "obviated the need for a declaratory judgment in this case." *Associated Mills, Inc. v. Regina Co., Inc.,* 675 F.Supp. 446, 448 (N.D.Ill.1987).

Because the Court is granting Erico's motion to dismiss GB's action seeking a declaratory judgment, there is no need to address Erico's alternative motion to transfer the proceedings in this Court to the Northern District of Ohio. Likewise, the Court cannot stay the proceedings in Ohio, as GB has requested, since the Northern District of Ohio is where the entire litigation must take place in the absence of any motions to transfer on GB's part. If litigation in that forum would inflict considerable hardship on GB, it may petition that court for relief. This Court has specifically declined to address the merits of GB's arguments as to the inconvenience of litigating in Ohio, since they would be more proper before Judge Battisti of the Northern District of Ohio.

For the foregoing reasons, this Court hereby GRANTS the defendant's motion and DISMISSES the plaintiff's declaratory action.

SO ORDERED.