The **BLACK AND DECKER CORPO-RATION** and **Black & Decker (U.S.) Inc., Plaintiffs,**

v.

**VERMONT AMERICAN CORPORATION, Defendant.**

No. 95 C 4992.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 20, 1995.

Raymond P. Niro, Raymond P. Niro, Jr., Robert J. Irvine, III, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL, for Plaintiffs.

Steven H. Hoeft, Mercedes A. Laing, Steven T. Shelton, McDermott, Will & Emery, Chicago, IL, James E. Millman, James R. Higgins, Jr., Amy B. Berge, Middleton & Reutlinger, Louisville, KY, for Defendant.

BUCKLO, District Judge.

On September 28, 1995, Magistrate Judge Martin Ashman issued a report and recommendation recommending that this action be transferred to the Western District of Kentucky in response to defendant's motion. No objection to Judge Ashman's report has been filed. I have reviewed the issues de novo and agree with Judge Ashman's careful and well-reasoned decision which is hereby adopted as the opinion of the court. Accordingly, defendant Vermont American Corporation's motion to transfer is granted and the case is transferred to the Western District of Kentucky pursuant to 28 U.S.C. § 1404.

### REPORT AND RECOMMENDATION

ASHMAN, United States Magistrate Judge.

This case is presently before the court on Defendant's, Vermont American Corporation ("Vermont American"), Motion to Dismiss, Stay or Transfer. Plaintiffs, The Black & Decker Corporation and Black & Decker (U.S.) Inc. ("Black & Decker"), filed this four-count Complaint on August 30, 1995 alleging: federal claims under the Lanham Act and for Common Law Trademark Infringement and Unfair Competition, and pendent state claims under the Uniform Deceptive Practices Act as enacted by Illinois and under the Illinois Anti–Dilution Act. Each of these claims results from Vermont American's promotion and sale of "Master Series" circular saw blades which allegedly infringes on Black & Decker's trademark rights to the "Master Series" mark. Black & Decker seeks injunctive relief in addition to compensatory and punitive damages. Vermont American asserts that the issues in this suit mirror those which are in dispute in its declaratory judgment action filed on August 14, 1995 (16 days prior to the instant action) in the Western District of Kentucky. In that Kentucky Complaint for Declaration of Rights, Vermont American alleges a controversy with Black & Decker over the "Master Series" trademark and seeks an order declaring that Black & Decker abandoned the trademark or, in the alternative, that Vermont American's use of the trademark does not infringe on any right of Black & Decker.

### I. Background Facts

The relevant background facts necessary for resolution of this motion have been gleaned from Black & Decker's Complaint, Vermont American's Complaint and the pleadings and arguments of the parties. These

facts will be considered undisputed for purposes of this motion only.

Black & Decker, a Maryland corporation with principal place of business in Towson, Maryland, is an international manufacturer and distributor of hardware tools. Vermont American, a Delaware corporation with principal place of business in Louisville, Kentucky, is also an international manufacturer and distributor of hardware tools. Black & Decker and Vermont American both market and distribute tools in Illinois and they directly compete in many of their products. (Black & Decker Complaint, ¶¶ 1–3, Vermont American Complaint, ¶¶ 1, 2).

In June 1987, Black & Decker adopted and began using "Master Series" as a trademark for a line of power tools and power tool accessories. (Black & Decker Complaint, ¶ 13, Vermont American Complaint, Exh. B). In the Spring of 1995, Vermont American began marketing and selling its "Master Series" circular saw blades which has packaging featuring Vermont American's house mark and logo. (Black & Decker Complaint, ¶ 16, Vermont American Complaint, ¶¶ 6, 7). On August 6, 1995, Black & Decker's trademark counsel, Harold Weinstein ("Weinstein"), sent a letter to Vermont American claiming Black & Decker's rights to the "Master Series" trademark and calling on Vermont American to "cease and desist" from any use of the trademark. (Vermont American, ¶ 8, Exh. B). Vermont American responded by letter on August 10, 1995 denying Black & Decker's claims to trademark rights alleging that Black & Decker abandoned the "Master Series" trademark in 1992 and, in the alternative, alleging that Black & Decker used the mark only for professional industrial/construction tools rather than the consumer circular saw blades marketed under "Master Series" trademark by Vermont American. (Vermont American Complaint, ¶ 9, Exh. C). On August 11, 1995, Weinstein replied by letter claiming ongoing use of the "Master Series" trademark, asserting the continued sale of "Master Series" tools, and renewing its "cease and desist" demand. (Vermont American Complaint, ¶ 20, Exh. D (not attached to Court's copy)).

From August 13–16, 1995, the National Hardware Show ("the Show") was held at McCormick Place in Chicago, Illinois, and both Black & Decker and Vermont American attended. At the Show, Vermont American displayed, marketed and promoted its "Master Series" circular saw blades. (Black & Decker Complaint, ¶ 4). On August 21, 1995, Vermont American sent a letter to Black & Decker responding to Weinstein's August 11 letter which reiterated their position and enclosed a copy of their declaratory judgment suit filed in the Western District of Kentucky. (Vermont American Memorandum, Exh. 3).[1]

## II. *Discussion*

Vermont American contends that this case should be tried in the Western District of Kentucky. Specifically, Vermont American argues that since both suits involve the same trademark and involve the same issues, Black & Decker's later-filed infringement Complaint should either be dismissed or stayed pending resolution of the declaratory judgment action. In the alternative, Vermont American urges that this case be transferred to the Western District of Kentucky.

First, Vermont American suggests that judicial economy and comity favor dismissal or stay of Black & Decker's suit. Regarding judicial economy, Vermont American urges application of the "first to file" rule whereby Black & Decker's later-filed suit involving the same issues should be dismissed or stayed due to the earlier-filed declaratory judgment action. The Seventh Circuit has long held that a federal suit may be dismissed in the interests of judicial administration whenever it is duplicative of a parallel action already pending in another federal court. (Citations omitted). *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). While courts have great discretion to determine whether one suit is duplicative of another; generally, a suit is considered dupli-

---

1. Vermont American notified Black & Decker that it had filed the declaratory judgment action in Kentucky, but told them that it would defer serving the Complaint in the hopes of reaching a settlement. Vermont American served Black & Decker subsequent to Black & Decker's filing of their Complaint.

cative if the "claim, parties and available relief do not significantly differ between the two actions." *Serlin,* 3 F.3d at 223, quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.,* 572 F.Supp. 1210, 1213 (N.D.Ill.1983).

■ A reading of the Complaints at issue here clearly shows that the same trademark and parties are involved in these two suits. There are differences in the remedies sought in that Vermont American seeks only a Declaration of Rights and Black & Decker seeks injunctive and monetary relief for alleged infringement of its rights. However, it is equally clear that Black & Decker's infringement action could have been and still can be brought as a compulsory counterclaim to Vermont American's Complaint. *See* Fed. R.Civ.P. 13(a).[2] If successful on such a counterclaim, Black & Decker would be entitled to no less relief than possible under the instant complaint. Given that the same parties, issues, and, ultimately, the same relief would be possible if these disputes were resolved in one action, the Court finds these actions duplicative.

Vermont American also urges dismissal or stay of Black & Decker's Complaint on a theory of comity.[3] The Court, ever respectful of the value and need for judicial comity, finds that the circumstances of this case do not compel dismissal or stay merely on the grounds that one case was filed prior to another. *See Tempco Elec. Heater Corp. v. Omega Engineering,* 819 F.2d 746 (7th Cir. 1987) ("this circuit has never adhered to a rigid "first to file" rule."). However, comity may impact upon the discretion of the Court in its next inquiry into the propriety of transfer under Section 1404.

■ Vermont American argues that Black & Decker's infringement action should be transferred to the Western District of Kentucky pursuant to 28 U.S.C. § 1404

("§ 1404"). Section 1404(a) governs the transfer of an action from one district court to another and provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

In moving for transfer under § 1404, a party concedes that venue properly lies in both the transferor and transferee district but argues that transfer will save the parties, witnesses and public unnecessary inconvenience and expense. *Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 (1960). The moving party has the burden of establishing, by reference to particular circumstances that the transferee forum is clearly more convenient, considering three factors: the convenience of parties, the convenience of witnesses and the interests of justice. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986), *Koos, Inc. v. Performance Industries, Inc.,* 747 F.Supp. 487, 490 (N.D.Ill. 1990). The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge. *Coffey,* 796 F.2d at 219.

Black & Decker argues that the holding in *Tempco* controls and bars transfer of this case. In *Tempco,* two manufacturers of temperature control and measurement devices had a dispute over a trademark. After an exchange of correspondence wherein defendant demanded that plaintiff cease use of the mark and threatened litigation, plaintiff brought a declaratory judgment action in the Northern District of Illinois. Within four days, defendant filed an infringement suit in another district and moved to dismiss plain-

---

**2.** FED.R.CIV.P. 13(a) provides in pertinent part:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

**3.** Judicial comity is defined as:

the principle in accordance with which the courts of one state of jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect.

BLACK'S LAW DICTIONARY, 6th ed. (1990), p. 267.

tiff's declaratory judgment action on the grounds that it involved the same facts, parties and issues. In affirming dismissal of the first filed declaratory judgment action, the Seventh Circuit noted a federal court's general discretion to decline to hear a declaratory judgment action and framed the issue as whether the district court properly exercised its discretion. *Tempco,* 819 F.2d at 747.

The court held that the mere filing of the declaratory judgment action first did not give plaintiff the right to choose the forum. Plaintiff urged adoption of a "first to file" rule but the Court rejected that proposal noting that "this circuit has never adhered to a rigid 'first to file' rule." (Citations omitted). *Tempco,* 819 F.2d at 750. Instead the Court held that, since the filing of the infringement suit had ripened the dispute between the parties, a declaratory judgment would serve no useful purpose and the district court properly exercised its discretion regarding hearing such actions by dismissing the declaratory judgment Complaint. *Tempco,* 819 F.2d at 749.

Black & Decker asserts that, like the plaintiff in *Tempco,* Vermont American filed its declaratory judgment action as a "preemptive strike" in anticipation of Black & Decker's infringement suit to gain "home court advantage" and to delay resolution of the dispute. Black & Decker argues that dismissal or transfer of this Complaint would "fly in the face" of *Tempco.* However, the Court finds that *Tempco* is not dispositive here.

■ This case is factually dissimilar in that the procedural posture of this case differs. Here, we are presented with a motion to dismiss, stay or transfer an infringement complaint whereas in *Tempco,* the court had to decide whether to dismiss a declaratory judgment action. This difference is significant since, unlike trademark infringement actions, courts have general discretion to decline to hear declaratory judgment actions but do not have the authority to exercise that discretion for another district. Essentially, Black & Decker argues that the declaratory judgment in Kentucky would serve no useful purpose; however, this Court does not have authority to make dispositive rulings on a

case pending in Kentucky. For this reason, *Tempco* does not preclude transfer of this case.

The Court finds the *Koos* case persuasive. In *Koos,* plaintiff, a Wisconsin corporation, brought suit for trademark infringement in the Northern District of Illinois four days after defendant, a Pennsylvania corporation, brought an action for declaratory judgment in the Eastern District of Pennsylvania. Judge James H. Alesia of the Northern District of Illinois held a hearing on plaintiff's motion for temporary restraining order and, *sua sponte,* transferred the later filed complaint for infringement to Pennsylvania pursuant to Section 1404(a). Significantly, Judge Alesia distinguished *Koos* from his earlier decision in *Associated Mills, Inc. v. Regina Co., Inc.,* 675 F.Supp. 446 (N.D.Ill. 1987). In *Associated Mills,* Judge Alesia relied on *Tempco* and exercised his judicial discretion to dismiss a first filed declaratory judgment action. However, in *Koos,* Judge Alesia found that since the case before him was an infringement action rather than a declaratory judgment action and because there were no issues as to venue because plaintiff was not an Illinois corporation, *Associated Mills* and *Tempco* were not dispositive. Given the procedural similarities, *Koos* controls in this case, and, as the Court did in *Koos,* this Court will conduct an analysis of Section 1404(a) factors to determine if transfer is proper.

Black & Decker also contends that transfer is improper under § 1404(a) because Chicago, not Kentucky, is a more appropriate location for this litigation. Specifically, Black & Decker asserts that Vermont American's activity at the National Hardware Show in Chicago constituted significant, well-planned acts of trademark infringement for which it seeks relief. However, Black & Decker's Complaint is not limited to the alleged infringement in Chicago but alleges infringement throughout the United States. (Black & Decker Complaint, ¶ 18). Just as in *Koos,* Black & Decker's infringement suit could be brought as a compulsory counterclaim to the declaratory judgment action in Kentucky. The Court finds that both Illinois and Kentucky have proper jurisdiction and venue

over the parties and issues involved in this dispute.[4] Therefore, the issue of transfer must be decided by an evaluation of § 1404(a) factors: convenience of parties, convenience of witnesses and interests of justice. The Court will address each factor individually.

## A. Convenience of Parties

■ While a plaintiff's choice of forum must be given some weight, that choice is not determinative. See *Wysnoski v. Millet,* 759 F.Supp. 439, 445 (N.D.Ill.1991). Here, Black & Decker has neither its headquarters nor principals in Chicago.[5] By contrast, Vermont American headquarters and principals reside in Kentucky. In addition, the saw blades at issue are manufactured, marketed and distributed from Kentucky.

Significantly, as discussed above, since both parties are national companies and because Black & Decker alleges nationwide infringement, it is clear that Black & Decker could have sought the same relief it seeks here in any other district in the United States. For these reasons, we find that balancing the convenience of the parties overwhelmingly favors Vermont American and Kentucky.

## B. Convenience of Witnesses

Vermont American has identified four of its employees who reside in Kentucky as potential witnesses regarding Vermont American's creation, adoption and investigation and use of the "Master Series" mark. Black & Decker has identified three nonparty witnesses (without indicating their residences) as potential witnesses regarding what they saw at Vermont American's booths at the National Hardware Show. Further, Black & Decker alleges that there will be other as yet unknown and unnamed witnesses within this court's subpoena power.

The central issues in this case are: Did Vermont American infringe, and did it damage Black & Decker? Regarding the issue of infringement, Vermont American has argued alternative defenses of abandonment and noninfringement. Black & Decker argues that the defense of abandonment depends "solely on Black & Decker's acts and intent, neither of which occurred in Kentucky." (Black & Decker Response, p. 8). However, neither did these acts occur in Illinois.

Of the named potential witnesses, only those of Vermont American relate in any way to Black & Decker's acts and intent since they propose to testify as to Vermont American's investigation of, and the corporate decision to use, the mark. On the other hand, Black & Decker's potential witnesses, even assuming that they reside within the subpoena power of this Court, reportedly will testify as to what they saw at the National Hardware Show. The Court notes that Vermont American does not dispute that it was at the Show or that it displayed and promoted its "Master Series" saw blades at the Show. This stipulation would essentially render Black & Decker's potential witnesses unnecessary on the issue of what happened at the Show.

On the issue of damage caused by infringement, Black & Decker argues that the critical issue at trial will be whether Vermont American's actions caused consumer confusion. Black & Decker presumably would use the named witnesses for such evidence. However, once again, Black & Decker alleges nationwide infringement; therefore, if the alleged infringement has caused nationwide consumer confusion, Black & Decker would presumably be able to find witnesses to that effect within the subpoena powers of the Western District of Kentucky. In fact, as Weinstein's Declaration avers, "thousands of potential customers [may have] seen [Vermont American's display at the Show]" (Weinstein Decl., ¶ 8).[6] Given that this Show

---

**4.** In fact, at oral argument both parties agreed that both Illinois and Kentucky have venue and jurisdiction over this litigation.

**5.** The Court notes that counsel for Black & Decker reside in Chicago. However, that fact has been held inconsequential under § 1404(a), (See

*Koos,* 747 F.Supp. at 490), and Black & Decker does not even argue the point.

**6.** Vermont American has moved to strike Weinstein's Declaration, the Supplemental Declaration and the Irvine Declaration. The Court now denies this motion but only those portions cited

is acknowledged by both parties to be the largest of its kind, while in 1993 and 1994 53% and 45% of attendees respectively came from a 100 mile radius of Chicago (Irvine Decl., ¶ 2), it is clear that attendees came from all over the United States, indeed, the world.

On the other hand, Vermont American's witnesses, as employees are within the control of Vermont American and no subpoena problems are anticipated. In addition Vermont American asserts that it would be an inconvenience to have those employee/witnesses come to Illinois to testify in this case. Given the proximity, this cannot be a serious challenge to keeping the case here. *See Duman v. Crown Zellerbach Corp.,* 107 F.R.D. 761, 765–66 (N.D.Ill.1985)

As Black & Decker fails to name *any* witnesses, party or nonparty, for whom Illinois is a more convenient forum, the balance of convenience rests slightly with Vermont American as the bulk of their witnesses are from Kentucky, even though they are employees.

### C. *Interests of Justice*

■ This factor primarily embraces judicial economy and efficiency, not the interests of the parties or the merits of the underlying claims. *Wysnoski,* 759 F.Supp. at 445, citing *Coffey,* 796 F.2d at 221. Relevant considerations are the presence of related litigation, the relative speed with which a case will get to trial, and the advantage of having a court most familiar with the applicable state law. *Wysnoski,* 759 F.Supp. at 445.

The parties have indicated that these two complaints constitute the entire litigation on this issue between the parties; therefore, only the latter two factors apply here.

Regarding the congestion of courts, the most recent statistics show that the Western District of Kentucky and the Eastern District of Illinois have an equal backlog (22 months from filing to trial according to the 1994 Federal Court Management Statistics, and 20 months from filing to disposition according to the 1994 Reports of the Proceedings of the Judicial Conference of the U.S.).

herein have been deemed relevant for the pur-

Therefore, according to these statistics, the issues in this litigation will be resolved at the same rate in either district.

Illinois law will apply in this case due to the pendent state claims in Black & Decker's Complaint. However, the issues involved are not so intricate that this Court would be better able to apply Illinois law than any other federal court. Both State claims arise from statutes and there is no question that the courts of the Western District of Kentucky have access to Illinois statutes and caselaw and are as competent as we are in applying them to the facts of this case.

Therefore, balancing the interests of justice results in no disadvantage to transferring this Complaint to Kentucky.

### III. *Conclusion*

For all the above mentioned reasons, this Court finds that Vermont American has sustained its burden of establishing factors which favor transfer. Therefore, this Court, by reason of comity and pursuant to Section 1404(a), recommends transfer of this case to the Western District of Kentucky.

**Dated:** September 28, 1995.

poses of this motion to dismiss, stay or transfer.