**GENERAC CORPORATION, Plaintiff,**

v.

**OMNI ENERGY SYSTEMS, INC., Defendant.**

No. 97–C–1139.

United States District Court, E.D. Wisconsin.

Sept. 30, 1998.

Joshua B. Levy, Kevin L. Keeler, Beck Chaet Molony & Bamberger, Milwaukee, WI, for Plaintiff.

George R. Serdar, Adam J. Brinkmann, Messerli & Kramer, Minneapolis, MN, for Defendant.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on defendant's motions to dismiss or, in the alternative, to transfer or stay this action. It also comes before the Court on plaintiff's motion for an injunction enjoining the defendant from proceeding with a parallel action filed in a Minnesota federal court. For the following reasons, defendant's motion to dismiss is granted and plaintiff's motion denied.

**I**

Generac Corporation ("Generac") is a Wisconsin corporation manufacturing and selling portable and stand-by electrical generators and other consumer and industrial products. (Omni Brief in Support at 2; Generac Brief in Opposition at 3.) Omni Energy Systems, Inc. ("Omni") is a Minnesota corporation selling portable and stand-by electrical generators, including generators manufactured by Generac. (Id.) Omni claims it is Generac's exclusive distributor in Minnesota, Western Wisconsin, North Dakota and South Dakota. (Omni Brief at 3.) Generac, however, has begun to deal with another distributor within this "exclusive" territory. Specifically, Generac is working with a distributorship started by Richard Apple ("Apple"), a former Omni officer and shareholder, who started his competing venture after an attempt to purchase control of Omni failed. (Omni Brief at 3–4.)

Apple's decision to start a competing dealership provoked a dispute between Omni and Generac, as evidenced by correspondence between the two companies during the months of August through October, 1997. (Complaint, Exs. A–C; Frady Second Aff., Exs. B–C.) In a meeting between the parties held October 16, 1997, and in a follow-up letter from Omni dated October 17, 1997, Omni presented four options for resolving the matter amicably. (Second Frady Aff., Ex. B.) Omni stated during the meeting of October 16th that it would file suit if Generac did not accept its proposals. (Second Frady Aff. at ¶ 8.) Generac promised to respond to Omni's proposals by October 30th. (Id., Ex. B.) In a letter dated October 29th, Generac rejected Omni's proposals for resolving the situation. (Id.) In a letter issued the following day, Omni informed Generac it was "referring the matter to [its] attorney for litigation today." (Second Frady Aff., Ex. C.)

But Generac struck first. On October 29, 1997, the day it sent its letter to Omni rejecting its settlement proposals, Generac also filed suit in this Court seeking a declaratory judgment that Omni's territory under their distributorship agreement was not exclusive and that Generac did not breach said agreement by appointing another distributor to operate within that territory. Omni responded with two lawsuits of its own. The first is a suit against Apple in Minnesota state court, filed roughly one week after Generac's suit, charging Apple with breaching his fiduciary duties as a shareholder and officer of Omni and usurpation of a corporate opportunity. (Brinkmann Aff. at ¶ 3, Ex. A.) The second is a suit against Generac in Minnesota federal court, filed roughly two weeks after Generac's suit, charging Generac with breach of the distributorship agreement. (Brinkmann Aff. at ¶ 5, Ex. C.) The parties dispute where the claims between Omni and Generac over the meaning and enforcement of the distributorship agreement should be heard: Omni argues it is not subject to jurisdiction in Wisconsin and that, in any event, it is more appropriate to litigate the matter in Minnesota. Generac argues that Omni is clearly subject to jurisdiction in Wisconsin, that there is no basis for upsetting its chosen forum, and that the "first to file" rule precludes Omni from going forward in Minnesota.

As for the jurisdictional question, it is undisputed that Generac's volume of sales to Omni, during 1997 alone, totaled $1,445,-

262.00. (Servis Aff. at ¶ 5.) Of this amount, Omni resold $322,000 of Generac products, or 22% of its 1997 Generac volume, to Pierce Fire Truck in Appleton, Wisconsin and Oshkosh Truck in Oshkosh, Wisconsin, both of whom are customers located within the Eastern District of Wisconsin. (Servis Aff. at ¶ 7.) Omni employees have traveled to Generac's facility in Waukesha, Wisconsin on several occasions for sales training sessions. (Servis Aff. at ¶ 6.) While Omni does not dispute these facts, it counters that the distributorship agreement between the parties was negotiated and executed in Minnesota, that most of the meetings between staff members of the two companies occurred in Minnesota, that most of Omni's sales of Generac equipment were to customers outside of Wisconsin, and that Omni sent its payments of Generac invoices to an Illinois account. (Omni Brief at 6–7).

## II

■ Analysis of whether this Court has personal jurisdiction over Omni is a two step process: First, the Court must determine whether Wisconsin's long-arm statute subjects Omni to personal jurisdiction in Wisconsin; second, the Court must determine whether the exercise of jurisdiction under the long-arm statute is consistent with the due process requirements of the 14th Amendment. *Kaufmann v. United States,* 840 F.Supp. 641, 649–50 (E.D.Wis.1993). Under Wisconsin law, once the long-arm statute is satisfied, there is a rebuttable presumption that the exercise of jurisdiction comports with due process. *State, ex rel. N.R.Z. v. G.L.C.,* 152 Wis.2d 97, 447 N.W.2d 533, 535 (1989).

■ Long-arm jurisdiction is clearly satisfied here. Under Wis.Stat. § 801.05(1)(d), a non-resident defendant is subject to jurisdiction in this state if, at the time the action is commenced, the defendant "[i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." Under this provision, Omni insists, almost irrationally, that it "has conducted no business in Wisconsin" (Omni Brief in Support at 6) and "has virtually no contact with Wisconsin

[other than] the ordering of Generac products" (Omni Reply Brief at 6). This simply is not true. Omni has an ongoing distributorship agreement with Generac, a Wisconsin manufacturer, through which it regularly purchases substantial amounts of product manufactured in, and shipped from, Generac's facilities in Waukesha, Wisconsin. This relationship generated almost $1.5 million in Wisconsin purchases by Omni over the course of 1997 alone. More significantly, Omni itself does a substantial amount of business in Wisconsin, particularly with customers located in the Eastern District of Wisconsin. In 1997, Omni sold over $300,000 of Generac equipment to customers in the Eastern District of Wisconsin, representing almost 25% of its total volume of Generac sales for the year. These are not insubstantial or isolated activities. These are substantial, continuous and systematic contacts with the State of Wisconsin initiated by Omni in an effort to make money from Wisconsin entities. To suggest otherwise borders on the frivolous.

■ Long-arm jurisdiction is also conferred under Wis.Stat. § 801.05(5)(b), which provides for jurisdiction over a non-resident defendant in any action which "[a]rises out of services performed by the defendant within this state, or *services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant . . . .*" (Emphasis added.) Under the distributorship agreement between the parties, Generac performed manufacturing and shipping services for Omni in Wisconsin, and approved Omni's sales orders here in Wisconsin. Such facts bring this case squarely within the holding of *Regal Ware, Inc. v. TSCO Corporation,* 207 Wis.2d 538, 558 N.W.2d 679 (Ct.App.1996). In *Regal Ware,* the plaintiff was a Wisconsin manufacturer who manufactured and shipped cookware to Japanese distributors through a long-standing agreement with the defendant, who acted as a broker. Similar to the facts asserted here, plaintiff commenced suit in Wisconsin seeking a declaratory judgment stating that the plaintiff was entitled to terminate its contract with the broker. The

broker argued that it was not subject to personal jurisdiction in Wisconsin, but the Court disagreed, citing § 801.05(5)(b) and stating, in pertinent part:

Regal Ware argues that personal jurisdiction can be established over TSCO because Regal Ware performed services for TSCO in Wisconsin. Regal Ware describes its activities for TSCO within the state as: manufacturing and shipping of cookware; approving sales orders submitted by TSCO to Regal Ware; and sending TSCO commission checks drawn on a Wisconsin bank. Regal Ware then submits that "much of [its] performance under its agreement with TSCO occurred in Wisconsin and that instate performance entitled the trial court to exercise jurisdiction over TSCO."

Section 801.05(5)(b), Stats., plainly encompasses the types of activities in which Regal Ware and TSCO engaged. The statute requires only that services be performed for the defendant by the plaintiff within the state and that such performance is "authorized or ratified" by the defendant. *See id.* There is no dispute that Regal Ware's manufacturing operation is conducted in Wisconsin. The benefits which TSCO received from its contractual relationship with Regal Ware arose out of Regal Ware's manufacture and shipping of cookware.

The long-standing nature of the contract further assures us of the second requirement—that this performance "was authorized or ratified by [TSCO]." *See id.* There is no dispute that TSCO knew that the cookware it brokered was manufactured in and shipped from Wisconsin. We are satisfied that TSCO's business activities with Regal Ware meet the requirements of § 801.05(5)(b), Stats., and thereby affirmatively establish the requisite "minimum contacts." The long-arm statute was intended to cover this type of arrangement. [Citation omitted.]

*Regal Ware,* 207 Wis.2d at 542–43, 558 N.W.2d at 681–82.

Here, as in *Regal Ware,* there is no dispute that Generac's manufacturing operation is conducted in Wisconsin and that the benefits Omni realized from its contractual relationship with Generac arose out of Generac's manufacture and shipping of generators here in Wisconsin. Moreover, the long-standing nature of the contract between the parties, which began with Omni's predecessor in 1991 and continues to this day after being assigned to Omni in early 1994 (*see,* Omni Brief in Support at 2–3), establishes that Omni knew that the goods it was purchasing from Generac were manufactured in and shipped from Wisconsin and that Omni therefore authorized those services by Generac and/or ratified the same.

■ Having satisfied the exercise of jurisdiction under Wisconsin's long-arm statute, "[t]he second prong of our inquiry must address whether the exercise of personal jurisdiction in this case is consistent with the constitutional guarantee of due process." *Regal Ware,* 207 Wis.2d at 543–44, 558 N.W.2d at 682. "In order to comport with due process, a defendant must have 'purposefully availed himself [or herself] of the privilege of conducting activity within the forum state, thus invoking the benefits and the protections of its laws.'" *Id.* (quoting, *Daniel J. Hartwig Assocs., Inc. v. Kanner,* 913 F.2d 1213, 1217 (7th Cir.1990)). "Jurisdiction is proper when the contacts result from actions by the defendant corporation which create a substantial connection to the forum state." *Id.* (citing, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). "Furthermore, if a contract exists between the two parties, a court must consider the impact of the contract on the question of whether a party has 'purposefully established minimum contacts within the forum.'" *Id.* (citing, *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185). "All prior negotiations and contemplated future consequences of the contract, as well as any relevant terms of the contract and the course of dealing between the parties, must be examined." *Id.* (citing, *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185–86). "Furthermore, only if the nature of the relationship between the nonresident to the company in the forum state is 'fortuitous' or 'attenuated' will a contractual relationship between the parties fail to satisfy this inquiry." *Id.* (quot-

ing, *Burger King,* 471 U.S. at 480, 105 S.Ct. at 2186, and citing, *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)). In *Regal Ware,* the Court found that facts almost identical to the facts involved here met the requirements of due process:

> The series of agreements underlying the dispute between Regal Ware and TSCO go back to 1986. Based on those agreements, Regal Ware manufactured cookware in Wisconsin and shipped it in response to orders it received from TSCO. TSCO was paid commission checks drawn on a Wisconsin bank. TSCO has had a long-term contractual agreement with Regal Ware; TSCO has "avail[ed] itself of the privilege of conducting activities within [Wisconsin], thus invoking the benefits and protections of its laws." *See Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239. TSCO's agreements created "continuing obligations" between itself and Regal Ware such that it is not unreasonable to require it to submit to the burden of litigation here. *See Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoted source omitted). We conclude that TSCO is subject to the reach of Wisconsin's long-arm statute and the exercise of personal jurisdiction over TSCO does not offend due process.

*Regal Ware,* 207 Wis.2d at 544, 558 N.W.2d at 682.

Here, Omni reached out and entered into or assumed a long-standing agreement with a Wisconsin manufacturer. This agreement created "continuing obligations" between itself and a Wisconsin manufacturer "such that it is not unreasonable to require it to submit to the burden of litigation here." More importantly, Omni sold over $300,000 worth of equipment to Wisconsin companies during 1997 alone, thereby "avail[ing] itself of the privilege of conducting activities within [Wisconsin], thus invoking the benefits and protections of its laws." On these undisputed facts, Omni's contacts with Wisconsin are certainly not "fortuitous" or "attenuated". To the contrary, they are direct, premeditated and systematic, and jurisdiction based thereon does not offend due process or the traditional notions of fair play and substantial justice.

### III

■ Omni moves to dismiss for improper venue, arguing that it is not a resident in the Eastern District of Wisconsin, that a substantial part of the events or omissions giving rise to the action did not occur here, and that it is not otherwise subject to personal jurisdiction in the Eastern District. *See,* 28 U.S.C.A. § 1391(a). However, under 28 U.S.C.A. § 1391(c), for venue purposes a corporation is deemed to reside in any judicial district in which it is subject to jurisdiction at the time the action is commenced. Based upon Omni's extensive activities in Wisconsin, including its extensive sales to customers located in the Eastern District, the Court has already concluded that Omni is subject to personal jurisdiction here. Therefore, venue is proper under either § 1391(a)(1) or (a)(3).

### IV

■ Omni moves the Court alternatively to transfer the matter to Minnesota "[f]or the convenience of parties and witnesses, in the interest of justice," pursuant to 28 U.S.C.A. § 1404(a). The principles governing such motions are well-established. "The decision to transfer venue is committed to the broad discretion of the district court." *L.B. Sales Corp. v. Dial Mfg., Inc.,* 593 F.Supp. 290, 295 (E.D.Wis.1984). The party requesting the transfer "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219–20 (7th Cir.1986). "A plaintiff's choice of forum is entitled to great weight and will not be disturbed except upon a clear-cut showing that convenience and justice for all parties demands that the litigation proceed elsewhere." *Eastern Refractories v. Forty Eight Insulations,* 668 F.Supp. 183, 187 (S.D.N.Y.1987). "The statute establishes a triple standard against which the facts of each case must be measured":

> First, the action must be one that could have been initially brought in the proposed transferee forum. Second, the transferee forum must be more convenient to the

parties and the witnesses. Third, the proposed transfer must be warranted in the interests of justice.

*L.B. Sales,* 593 F.Supp. at 295.

■ The parties concede that the action could have been brought in the federal District Court of Minnesota. As for convenience of parties and witnesses, it is clear that a movant "[is] obligated to clearly specify the key witnesses to be called" and to submit something "in the way of affidavits, depositions, stipulations, or any other type of document containing facts tending to establish who (specifically) it planned to call or the materiality of that testimony." *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293–94 (7th Cir.1989). Here, Omni submits the names of 9 individuals residing in Minnesota, several of whom are current or former employees, who "may have knowledge or information related to the present action." (Frady Second Aff. at ¶ 5.) Omni does not indicate, however, what the testimony of these witnesses might be, or how that testimony might be material to the action. Generac lists some 8 individuals residing in Wisconsin who have had regular business contacts with Omni. (Servis Aff. at ¶ 9.) Generac also does little to explain why the testimony of these witnesses will be material to this action, but it is Omni's burden to show that the testimony of its proposed witnesses is clearly more material. It has not met that burden. It is well-established that a "transfer should not be granted when to do so would merely shift, rather than eliminate, the inconvenience of the parties." *Ellis Corporation v. Team Textile Corporation,* 574 F.Supp. 170, 173 (N.D.Ill.1983).

■ Under the interests of justice analysis, the Court considers five basic factors: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of unwilling witnesses; (4) the possibility of a view of the premises; and (5) the state of the court calendars.

*L.B. Sales,* 593 F.Supp. at 296. Here, the relative ease of access to proof is not a significant factor. In cases like this, much of the proof will be documentary, and documents such as contracts and financial records are easily copied and transferred to either forum. Omni does not identify a single unwilling witness who it will not be able to compel to testify in Milwaukee, Wisconsin, nor does it quantify the cost of compelling any such witness to testify here. There is no need for a jury or court to "view" any particular piece of property or equipment, as there might be in a personal injury case. And Omni provides no evidence concerning the relative state of the calendars in the Minnesota federal district court and the Eastern District of Wisconsin.

Based on the foregoing, Omni does not meet its difficult burden for obtaining a discretionary transfer of venue under § 1404(a). As a venue question, the matter must should here in Wisconsin.

**V**

■ Finally, both parties argue that the other should be enjoined from pursuing the lawsuits each has filed in their respective forums. Generac argues that, as the first-filed action, this case should proceed to the merits and Omni should be enjoined from pursuing matters in the Minnesota federal court. Omni argues that Generac's suit should be dismissed as representing nothing more than a race to the courthouse. On this issue, the Court agrees with Omni.

A critical difference between the two pending actions is that Generac seeks declaratory relief and Omni seeks damages. In a diversity action in federal court seeking a declaratory judgment, 28 U.S.C. § 1332 provides the Court with subject matter jurisdiction, but 28 U.S.C. § 2201 provides the Court with the power to issue the specific remedy of declaratory relief. *Greene v. Costle,* 577 F.Supp. 1225, 1231 (W.D.Tenn.1983). The latter power is discretionary, however. "It is well settled that the federal courts have discretion to decline to hear a declaratory judgment action, even though it is within their jurisdiction." *Tempco Electric Heater Corp. v. Omega Engineering, Inc.,* 819 F.2d 746, 747 (7th Cir.1987). When exercising that discretion, courts look first to the fact situation

giving rise to the request for declaratory relief:

> A declaratory judgment is available where a party desires a declaration of the legal effect of a proposed or past course of action. Essentially, two related but distinct fact situations are contemplated: (1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision.

*Id.* 819 F.2d at 749.

As in *Tempco*, this case falls into the first category. Generac has already engaged in the allegedly wrongful conduct and continues to do so. Omni's right to a coercive remedy, if any, has accrued. *Id.* "In such circumstances, a federal court may grant a declaratory judgment to prevent one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Id.* However, as in *Tempco*, that is not the case here. Omni, though it certainly accuses Generac of wrongdoing, was involved in good faith settlement negotiations with Generac and was waiting for Generac's reply when this suit was filed. Omni promptly filed its own suit two weeks later. *Id.* It looks, then, as though Generac's suit was a preemptive strike. The 7th Circuit does not adhere to a strict "first to file" rule in situations where it appears a declaratory judgment action was filed to preempt litigation in another forum:

> Tempco asserts that the district court deprived it of its "right" to bring a declaratory judgment action in the forum of its choosing. However, the mere fact that Tempco filed its declaratory judgment action first does not give it a "right" to choose a forum. This circuit has never adhered to a rigid "first to file" rule. *See Tamari*, 565 F.2d at 1203; *Chicago Furniture Forwarding Co. v. Bowles*, 161 F.2d 411, 412 (7th Cir.1947). We decline Tempco's invitation, based on *Crosley Corp. v. Westinghouse Electric & Manufacturing Co.*, 130 F.2d 474 (3d Cir.), *cert. denied,*

317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546 (1942), to adopt such a rule here. As we have noted before, "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." *American Automobile Insurance*, 103 F.2d at 617. " '[T]he federal declaratory judgment is not a prize to the winner of the race to the courthouse.' " *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978) (quoting *Perez v. Ledesma*, 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 694, 27 L.Ed.2d 701 (1971) (Brennan, J., dissenting)), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

> Although a "first to file" rule would have the virtue of certainty and ease of application, thus eliminating some of the waste referred to supra ..., the cost—a rule which will encourage an unseemly race to the courthouse and, quite likely, numerous unnecessary suits—is simply too high.

*Tempco*, 819 F.2d at 749–50.

Based on the 7th Circuit's decision in *Tempco*, the Court concludes that adherence to the first-to-file rule is inappropriate on the facts of this case. Only one litigation should go forward, and the Court cannot abide what appears to be Generac's "race to the courthouse."

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion for an injunction is denied; and

2. Defendant's motion to dismiss is granted and the case dismissed.

**SO ORDERED.**